## Richmond

MILDRED LUCRETIA THURSTON

V.

CHARLES J. MAGGARD, JR., ETC., ET AL.

February 29, 1980.

Record No. 780206.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

G. M. Weems for appellant.
Fred A. Talbot (Bremner, Baber & Janus, on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

This appeal involves funds held in a joint savings account in the names of a depositor "or" his niece under a signature card providing that upon the death of either, title to the deposit shall vest in the survivor. The question is whether the niece was entitled to the funds upon the death of the depositor.

On February 20, 1976, Charlie J. Maggard died intestate, leaving as his sole heir-at-law his son, Charles J. Maggard, Jr., who duly qualified as administrator of the estate. For seventeen years until Maggard's death his niece, Mildred Lucretia Thurston, had resided with him in his home. After Maggard's death, she delivered to the administrator various papers, including a savings book that showed an account with The First and Merchants National Bank in the names of "C. J. Maggard or Mildred L. Thurston". On March 5, 1976, the administrator withdrew the proceeds of the joint savings account from First and Merchants and deposited them in a separate account.

On March 10, 1976, Thurston filed a bill of complaint in the court below against the decedent's son, the son's wife, and First and Merchants, seeking to enforce an alleged oral contract by which, she maintained, Maggard had promised her all his property, real and personal, including the joint bank account, at his death. Responsive pleadings were filed, and the cause was referred to a commissioner in chancery who heard the testimony of witnesses and filed his report, together with exhibits and a transcript of the testimony. The commissioner reported that the evidence was insufficient to establish the alleged oral contract, but that Thurston was entitled to the proceeds of the joint bank account in the sum of $7,688.75, with interest thereon at the rate of 4½% from March 5, 1976, less rental of $47.50 per month for the time that Thurston occupied Maggard's residence after his death.

Maggard's son, individually and as administrator of the estate, and his wife filed exceptions to the commissioner's report in respect to the ownership of the joint bank account and the amount of rental fixed for the residence. The trial court sustained the exceptions and, by final order entered on November 16, 1977, decreed that the proceeds of the joint account were the property of the estate, and that Thurston was liable to the son, individually and as administrator of the estate, for rental in the amount of $95 per month from the date of Maggard's death until she vacated the premises. In other respects, the commissioner's report was confirmed. Thurston's appeal challenges only the chancellor's ruling that she is not entitled to the proceeds of the joint bank account.

In 1964, Maggard originally opened with First and Merchants a savings account in his name only. On January 22, 1971, the account was changed, pursuant to his written request, to read "C. J. Maggard or Mildred L. Thurston", and Maggard and Thurston signed a signature card that provided in pertinent part as follows:

"SAVINGS ACCOUNT (JOINT)
No. 6087-050-10-01-9018 or C. J. Maggard—deceased or Mildred L. Thurston
To First & Merchants National Bank:
    We hereby agree with each other and declare to you as follows:
    That all moneys, checks and other instruments for the payment of money at any time deposited in this account and all interest accrued thereon are and will be our joint property during our joint lives and upon the death of either of us the entire right, title and interest therein shall vest absolutely in the survivor; . . . ."

The evidence is undisputed that Maggard retired from his employment in 1969 at the age of 62 years, that he suffered an attack of emphysema in 1970, that all moneys deposited in the joint account came from Maggard, that Thurston did his banking for him from 1970 until his death, and that she was listed as a dependent on Maggard's federal and state income tax returns for 1973, 1974, and 1975. There is no evidence that Maggard suffered any mental incapacity or impairment at any time prior to his death or that he was subjected to undue influence when he established the joint account.

The evidence tends to show that after Maggard's retirement he continued to fish and hunt until approximately six months prior to

his death, that in 1973 he suffered a serious illness, which required him to be hospitalized for a time, but that only during the last few months of his life was he permanently incapacitated.

The evidence is in conflict as to the nature and extent of the services that Thurston rendered to Maggard during the seventeen years that she made her home with him. Maggard's brother and two sisters, however, testified to statements made by the decedent that he had provided for Thurston's support after his death. Maggard's son and members of his family testified that Maggard told them that everything he had would go to the son.

■ Over a period of many years, we have decided numerous cases determining survivorship rights of parties to joint accounts. In *Wilkinson* v. *Witherspoon,* 206 Va. 297, 142 S.E.2d 478 (1965), which also involved a joint account of a depositor and his niece, we reviewed the earlier cases and summarized the applicable legal principles. There is a presumption that a deposit by a person in the name of himself and another, not his wife, was made for the convenience of the depositor, and the presumption is strengthened by the illness or disability of the depositor.* *Id.* at 302, 142 S.E.2d at 481. The rights of the parties are to be determined by the rules of contract law. *Id.* at 304, 142 S.E.2d at 483.

The intention of the depositor is controlling. Where the terms of the deposit show a clear intention that title shall vest in the survivor, the intention is upheld. Where such clear intention is shown only when the terms of the deposit are considered with other evidence, the intention is upheld. Where a contrary intention is shown, it is upheld. *Id.* at 303-04, 142 S.E.2d at 482.

In *Wilkinson,* holding that the language of the signature card comprising the deposit contract and the circumstances surrounding its execution rebutted the presumption of convenience, we awarded the proceeds of the account to the survivor. *Id.* at 305, 142 S.E.2d at 483.

Our holding in *Wilkinson* was amplified in *Campbell* v. *Campbell,* 211 Va. 31, 175 S.E.2d 243 (1970), where we held that the survivor, a daughter of the decedent, was entitled to the joint account solely because the signature card language, identical in legal effect to that in *Wilkinson,* expressed this clear intention. *See also Robbins* v. *Grimes,* 211 Va. 97, 175 S.E.2d 246 (1970).

The chancellor's reliance upon *King* v. *Merryman,* 196 Va. 844,

---

* Note: This presumption has been abolished by Code § 6.1-125.5, effective July 1, 1980. Under this statute, the survivor will take the funds on deposit unless there is clear and convincing evidence of a different intention.

86 S.E.2d 141 (1955), *Quesenberry* v. *Funk,* 203 Va. 619, 125 S.E.2d 869 (1962), and *Colley* v. *Cox,* 209 Va. 811, 167 S.E.2d 317 (1969), is misplaced. In *King* and *Quesenberry,* the presumption of convenience was strengthened rather than rebutted by the evidence. In *Colley,* without relying upon the presumption of convenience, we held that no survivorship account was created where there were no instructions to the bank when the account was opened or contractual language on the signature card showing an intention to have the account pass to the survivor.

In the present case, the language of the signature card is clear, unambiguous, and unequivocal. It expresses the unmistakable intention of Maggard that his niece, if she survived him, should have title to the deposit. The signature card alone rebuts the presumption that the joint account was opened as a convenience to Maggard. The burden of going forward with evidence to show that it was not Maggard's intention to have the deposit go to Thurston then fell upon those who opposed her claim. They have failed to carry this burden, and, indeed, have relied upon the rebuttable presumption of convenience that has been overcome. Their evidence, insofar as it relates to the joint bank account, is little more than an attack upon Thurston's character and habits. No attempt was made to show that Maggard was not mentally competent when he signed the signature card in 1971, or that he signed by mistake or under undue influence and did not intend for the account to pass to the survivor in accordance with its explicit contractual language. We will uphold the decedent's intention, as expressed in the language of the signature card, that Thurston shall have the deposit.

The judgment of the trial court will be reversed, and the case remanded for entry of an order awarding Thurston judgment in the sum of $7,688.75, with interest thereon at the rate of 4½ % per annum from March 5, 1976, less rental at $95 per month from February 20, 1976, until the date Thurston vacated the residence property of the late Charlie J. Maggard.

*Reversed and remanded.*