## Richmond

### ROSE MARY McCOY STURGILL, ADMINISTRATRIX

### V.

### VIRGINIA CITIZENS BANK

April 30, 1982.

Record No. 800148.

Present: All the Justices.

*William J. Sturgill (Elizabeth S. Sturgill; Sturgill and Stump, P.C.,* on briefs), for appellant.

*John M. Farmer (Jo D. Molinary; Buddy H. Wallen, P.C.,* on brief), for appellee.

PER CURIAM.

In a motion for judgment, Rose Mary McCoy Sturgill, Administratrix (Administratrix), attempted to recover from Virginia Citizens Bank (Bank) the $13,748.58 balance of R. V. McCoy, Jr.'s bank account which the Bank, after McCoy's death, had transferred to a third party. In a bench trial, the trial court struck the Administratrix's evidence and granted summary judgment for the Bank. We reverse.

On March 28, 1975, McCoy opened an individual checking account with the Bank. Eighteen months later, McCoy telephoned Jimmy Vanover, the Bank president, stating that he had remarried and desired to change his account to a joint account. On October 11, 1976, he and "Kaye Stanley McCoy" appeared at the Bank.[1] They added "Kaye McCoy's" signature to the account card and requested new checks issued bearing both their names. The account card signed by McCoy is set forth as follows:

| S.S. No. 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 | Firm Account | [ ] |
| | Individual Account | [x] |
| R. V. McCoy, Jr. | Special Account | [ ] |

To the VIRGINIA CITIZENS BANK:   Acct. # 100291n0

I hereby agree that this account shall be subject to, and that I will be bound by, the RULES AND REGULATIONS Governing Accounts in the Virginia Citizens Bank, relating to accounts generally and to checking accounts, as they may have been amended from time to time, and acknowledge advice that copies thereof are available to depositors upon request at each of your offices.

You are authorized to recognize any (*one) of the signatures below in the payment of funds or the transaction of any business for this account.

(*Indicate number of signatures required.)

---

[1] The evidence at trial revealed that McCoy and Kaye Stanley were living together unmarried.

Date 3/28/75       s/ R. V. McCoy, Jr.
                      s/ Kaye McCoy
                      Box 734, Clintwood, Virginia 24228

On the reverse side of the account card, there is this notation: "Kaye McCoy's signature added Oct. 11, 1976." Vanover admitted that in another trial he testified that the Bank's practice was to note the word "joint" on joint account cards. This notation did not appear on McCoy's account card.

Vanover's office lies next door to the apartment complex where McCoy lived. On December 4, 1976, Vanover was working in his office when he noticed an ambulance. Upon investigation, he learned of McCoy's death. The Administratrix received McCoy's personal effects and discovered the account's existence. She testified that she called Vanover on December 6, 1976, between 9:00 and 9:05 a.m. and instructed him not to honor any checks drawn on McCoy's account. According to Vanover, the Administratrix did not call him until 10:30 a.m., after "Kaye McCoy" had cashed a check for $13,748.58. The Administratrix offered into evidence a cancelled check in the amount of $13,748.58, dated December 6, 1976, and drawn by "Kaye McCoy" on McCoy's account payable to the Bank to close the account.

The trial court ruled that Code § 6.1-72[2] (repealed, effective July 1, 1980) controlled, and struck the evidence of the Administratrix. It did not pass upon the ownership of the money between the estate of the decedent and the drawer of the check dated December 6, 1976.

■ We first must determine what rights McCoy and Kaye Stanley had in the account. The account's signature card is a contract between a depositor and the Bank. *Thurston* v. *Maggard,* 220 Va. 815, 818, 263 S.E.2d 64, 66 (1980). In *Colley* v. *Cox,* 209 Va. 811, 814, 167 S.E.2d 317, 319 (1969), we said:

---

[2] Code § 6.1-72 (Repealed effective July 1, 1980) *Deposits in names of two or more persons, or survivors; how discharged.*—When a deposit has been made, or shall hereafter be made, in any bank or trust company transacting business in this State, under the names of two or more persons, payable to either, or payable to the survivor or any survivor, such deposit, or any part thereof, or any interest or dividend thereon, may be paid to any of such persons, whether the other or others be living or not, and the receipt or acquittance of the person so paid shall be a valid, sufficient and complete release and discharge of the bank or trust company for any payment so made. The term "deposit" shall include certificates of deposit, heretofore and hereafter issued.

The rights of the parties here must be determined by rules pertaining to the interpretation of contracts . . . . It is for this reason that the provisions of the signature card become significant. The card constitutes the contract between the depositor of money, and the bank in which it is deposited, and it controls the terms and disposition of the account.

We hold that the trial court erroneously relied on Code § 6.1-72. That provision applied to deposits made "under the names of two or more persons." This account began as an individual account and remained unchanged. The account card, dated March 28, 1975, designates the account as an individual account in the name of R. V. McCoy, Jr., and lists only his social security number. The only change occurred 18 months later, when McCoy added "Kaye McCoy" as an authorized signature and the Bank made a notation on the card's reverse side of the transaction date. If McCoy intended to convert the individual account to a joint account, he failed. He merely added a new authorized signature, but did not create a new account or amend the existing account.

Our next inquiry is whether the Bank properly paid a check issued after McCoy's death and signed by "Kaye McCoy."[3] McCoy added the "Kaye McCoy" signature for his personal convenience, thus establishing an agency relationship between himself and his girlfriend. Because death of a principal terminates an agent's authority, unless that authority is coupled with an interest, *King, Adm'x.* v. *Beale,* 198 Va. 802, 808-09, 96 S.E.2d 765, 770 (1957), "Kaye McCoy" had no authority to write checks on the account after December 4, 1976. Simply put, "a power ceases with the life of the person who gives it." *Clayton* v. *Fawcett's Adm'rs.,* 29 Va. (2 Leigh) 19, 23 (1830). Of course, Code § 8.4-405(1) provides that a customer's death will not revoke a bank's authority to pay a check until the bank knows of the death and has had a reasonable opportunity to act on it. In this case, the Bank had immediate, actual knowledge of McCoy's death and a

---

[3] The Bank relies on Code § 8.4-405(2), which states: "Even with knowledge a bank may for ten days after the date of death pay or certify checks drawn on or prior to that date unless ordered to stop payment by a person claiming an interest in the account." Because this provision specifically refers to checks drawn on or prior to the date of death, it cannot apply to this factual situation. McCoy died on December 4; "Kaye McCoy" signed the check on December 6.

reasonable opportunity to act on this knowledge. It could have refused payment easily on the December 6 check.

We conclude that "Kaye McCoy" had the authority to sign checks on McCoy's account, that her authority ended at his death, and that the Bank knew of McCoy's death within a reasonable time to act on such knowledge. We reverse the judgment of the trial court and enter final judgment for the Administratrix in the amount of $13,748.58. This is without prejudice to the rights of the Bank to recover from the drawer of the check as provided in Code § 8.4-407.

*Reversed and final judgment.*