Present: All the Justices

JAMES B. WOLFE, ET AL.

v. Record No. 991705

BOARD OF ZONING APPEALS OF
FAIRFAX COUNTY, ET AL.

                                        OPINION BY
                            CHIEF JUSTICE HARRY L. CARRICO
                                     June 9, 2000

BOARD OF ZONING APPEALS OF
FAIRFAX COUNTY

v. Record No. 991706

JANE W. GWINN, ZONING
ADMINSTRATOR OF FAIRFAX COUNTY

            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Leslie M. Alden, Judge

                            Background

    On April 1, 1997, the Zoning Administrator for Fairfax

County issued a notice of violation to James B. Wolfe and

Raymond L. Wolfe stating that a recent inspection had

revealed the operation of a business called Wolfe Brothers,

Inc. on property identified on the Fairfax County Tax Map

as No. "41-1((1))15" (hereinafter, Lot 15), with the

parking of commercial vehicles[1] and the storing of building

materials. These activities, the notice stated, were

_____

[1] The commercial vehicles listed in the notice of violation
included a Chevrolet dump truck and a Sierra GMC dump
truck, both with "Wolfe Bros., Inc." lettered thereon, as
well as a Chevrolet flat bed roll-off vehicle, a Chevrolet

"deemed to be a contractor's office and shop and a storage yard," uses not permitted under the Fairfax County Zoning Ordinance in an R-2 District, the residential zoning classification applicable to Lot 15.  The notice stated further that the parking of the vehicles also violated a provision of the zoning ordinance permitting the parking of only "one (1) commercial vehicle per dwelling unit in an R district."

On April 28, 1997, Wolfe Brothers, Inc., Raymond L. Wolfe, and James B. Wolfe (collectively, the Wolfes)[2] gave notice of their intention to appeal the notice of violation to the Fairfax County Board of Zoning Appeals (the BZA). At a hearing before the BZA on September 9, 1997, the issues included whether the vehicles the Wolfes parked on their property were commercial vehicles within the meaning of the zoning ordinance, whether such parking implicated a "lawful nonconforming" or "grandfathered" use or a "vested right," and whether the Zoning Administrator was estopped from enforcing the prohibition against more than one commercial vehicle per dwelling because of the actions of a former senior zoning inspector.  On a tie vote of three to

stake body truck, and a flat bed trailer with a front-end loader/back hoe.

2

three, the BZA upheld the determination of the Zoning Administrator concerning Lot 15.[3]

On October 16, 1997, pursuant to Code § 15.2-2314, the Wolfes filed in the trial court a petition for a writ of certiorari challenging the decision of the BZA.[4]  A writ of certiorari was issued to the BZA, and the record of the proceeding before the BZA was forwarded to the trial court.[5]

During the hearing before the BZA on Lot 15, the Deputy Zoning Administrator noted that the Wolfes also owned Lot 15A, located to the rear of Lot 15, and he told the BZA "it was hard to tell . . ., out in the field, which

---

[2] The record indicates that Raymond Wolfe and James Wolfe are the owners of the property and Wolfe Brothers, Inc. is the tenant.

[3] Under § 18-306(2) of the Fairfax County Zoning Ordinance, the concurring vote of four of the seven members of the BZA is required to overturn a determination of the Zoning Administrator.

[4] The Wolfes say on brief that this petition for certiorari raised "commercial parking and storage-yard issues." However, the petition itself states clearly that "[u]pon [the Wolfes'] appeal of the Notice [of Violation] to the BZA, the only issue pertained to the [Wolfes'] continued parking of various vehicles, utilized by [the Wolfes] in their contracting enterprises, upon the subject premises. All other issues had been, and have remained, resolved by agreement of the parties."  In addition, the trial court ruled that the Zoning Administrator's finding concerning illegal parking was the only issue before the court with respect to Lot 15, the other issues having "been resolved among the parties."  Consequently, we will disregard any further reference by the Wolfes to the storage-yard issue so far as Lot 15 is concerned.

lot the equipment was parked on so only 15 was cited."  The Deputy also said "it appears that at least some of the equipment is parked on 15A," and he thought the situation "will require [the Zoning Administrator] to . . . turn around and issue a notice to include 15A."[6]

Accordingly, on June 29, 1998, the Zoning Administrator issued a notice of violation to Raymond L. Wolfe and James B. Wolfe stating that recent inspections had revealed that trucks and construction equipment were being stored on Lot 15A.  The notice also stated that "[t]he storage of these vehicles and construction equipment is deemed to be a storage yard," a use not permitted in an R-2 District, the residential zoning classification applicable to Lot 15A.

On July 21, 1998, the Wolfes gave notice of their intention to appeal the notice of violation on Lot 15A to the BZA.  At a hearing before the BZA on October 27, 1998, the issues included whether the vehicles parked on Lot 15A were commercial vehicles within the meaning of the zoning ordinance, whether such parking was a "grandfathered" or a

---

[5] This certiorari proceeding was designated in the trial court as At Law No. 165844, and it is incorporated in our Record No. 991705.
[6] The record shows that Lot 15 contains one-half acre and is improved by a dwelling.  Lot 15A contains .3640 acre and is

4

"permitted . . . nonconforming" use, and whether the Zoning Administrator was estopped from enforcing the prohibition against more than one commercial vehicle per dwelling because of the actions of the former senior zoning inspector.

On a vote of four to three, the BZA reversed the determination of the Zoning Administrator. On November 25, 1998, the Board of Supervisors of Fairfax County (the Board of Supervisors) and Jane W. Gwinn, the Zoning Administrator, filed in the trial court a petition for a writ of certiorari challenging the decision of the BZA with respect to Lot 15A. A writ of certiorari was issued to the BZA, and the record of the proceedings before the BZA was forwarded to the circuit court. [7]

### Trial Court Proceedings

On February 23, 1999, the Zoning Administrator moved for the entry of "an order of nonsuit as to the claim by the Board of Supervisors," asserted in the certiorari petition relating to Lot 15A. The motion stated that the Board of Supervisors "did not authorize the filing of the Petition [for Certiorari] on its behalf." An order was

unimproved, except that a garage is located partly on Lot 15 and partly on Lot 15A.

5

entered on March 5, 1999, providing that "this matter is nonsuited insofar as it purports to state any claim on behalf of the Board of Supervisors."

The Wolfes filed a motion to consolidate for hearing the two petitions for certiorari. The trial court granted the motion.

The BZA then filed a motion to dismiss the petition for certiorari relating to Lot 15A. The motion alleged that the Zoning Administrator lacked standing "to prosecute an appeal of the decision of the BZA" in light of the admission, made in the Zoning Administrator's motion for nonsuit and incorporated in the nonsuit order, that the Board of Supervisors did not authorize the certiorari petition "to be filed on its behalf."

The trial court denied the BZA's motion to dismiss. The court held that Gwinn, as the Zoning Administrator, "has standing to bring this case whether the Board of Supervisors joins in, authorize[s] it, or takes some contrary position."

Proceeding to the merits of the two petitions for certiorari, the trial court rejected the Wolfes' request that the "second appeal," i.e., the certiorari petition

---

[7] This certiorari proceeding was designated in the trial court as At Law No. 176552, and it is incorporated in our

6

relating to Lot 15A, be heard first because, the Wolfes claimed, "[t]he administrative record [in the second appeal] is much more complete."  The trial court stated that it would consider the cases "in the order in which they were filed," meaning that the appeal concerning Lot 15 would be considered first.

The court then held that "the vehicles [in question] are clearly commercial vehicles" and that "the Zoning Administrator was correct in . . . finding that the Wolfes had illegally parked commercial vehicles . . . on Lot 15." The court recognized that, because "the [Wolfes] had a commercial vehicle in 1969 parked on the property . . .., they may continue to park that vehicle there as long as it's not a tractor-trailer."  The court held further that "estoppel is not an argument that may be made against the government in the performance of its legitimate functions." In a final order entered April 20, 1999, and a corrected order entered April 28, 1999, the court affirmed the decision of the BZA with respect to Lot 15.

Concerning the petition for certiorari relating to Lot 15A, the trial court held that the BZA had "relied on erroneous principles of law" in overturning the determination of the Zoning Administrator.  The court

---

Record No. 991706.

7

stated that there was "no grandfather issue" with respect to Lot 15A, that estoppel was not available to the Wolfes concerning statements made to them by zoning officials, and that the storage of vehicles on Lot 15A was not "some kind of a lawful nonconforming use." Accordingly, in a final order entered April 20, 1999, the court reversed the decision of the BZA and reinstated the determination of the Zoning Administrator that the Wolfes' use of Lot 15A constituted a storage yard in violation of the zoning ordinance.

The Wolfes appeal from the final judgments in both certiorari proceedings, and the BZA appeals from the final judgment in the proceeding involving Lot 15A. We will consider the cases in the same order as the trial court, meaning that we will consider Lot 15 first and on its own separate record.

### Lot 15 — Record No. 991705

### Procedural Defaults

The Wolfes have defaulted several of the arguments they make on appeal with respect to Lot 15. First, the Wolfes argue that, "because the BZA's 1997 decision [involving Lot 15] was effectively subsumed within and superseded by the 1998 BZA decision [involving Lot 15A], the initial BZA decision and the Circuit Court's affirmance

8

thereof are essentially void and should be reversed." This argument was not made in the trial court, Rule 5:25, and the point is not the subject of an assignment of error, Rule 5:17(c). Accordingly, we will not notice the point. Buck v. Jordan, 256 Va. 535, 545-46, 508 S.E.2d 880, 885-86 (1998) (this Court will not consider issues raised for the first time on appeal); City of Winchester v. American Woodmark Corp., 250 Va. 451, 460, 464 S.E.2d 148, 153-54 (1995) (this Court does not consider arguments that are not the subjects of assignments of error).

Second, in urging reversal of the trial court's judgment upholding the 1997 BZA decision concerning Lot 15, the Wolfes argue at great length on the point that they have been pursued for "violations regarding Lot 15 for activities which were, in fact, occurring on Lot 15A." The Wolfes made no argument in the trial court questioning whether Lot 15 served as the location of vehicles allegedly parked in violation of the zoning ordinance. Indeed, the Wolfes conceded the point below. In their petition for a writ of certiorari regarding Lot 15, the Wolfes stated that, "[b]ased upon uncontroverted evidence before the BZA, there is no question the parking of vehicles designated in

9

the Notice [of Violation] has occurred, and yet is occurring, upon both Lot 15 and Lot 15(A)."[8]

Moreover, the Wolfes have not assigned error to the trial court's finding that Lot 15 served as the location of illegally parked vehicles. In their petition for appeal, the Wolfes assigned only two errors that are presently pertinent to Lot 15.[9] They read as follows:

> 3. The Circuit Court erred in concluding that the Wolfes' construction vehicles were "commercial vehicles" under the 1959 and 1978 Fairfax County Zoning Ordinances.

> 4. The Circuit Court erred in determining that estoppel, in the narrow sense the term was used by the Wolfes, was inapplicable.

Assignment of Error No. 3 involves only the question whether the Wolfes' vehicles were commercial vehicles within the meaning of the zoning ordinances and not whether the vehicles were parked on Lot 15. Similarly, Assignment of Error No. 4 involves only the question whether estoppel is applicable in this case, which turns solely on the

---

[8] This statement was made in an obvious attempt by the Wolfes to support the allegations in their petition for a writ of certiorari that the parking of vehicles on their property was a grandfathered or lawful nonconforming use.

[9] A third assignment of error, No. 2, alleged that "[t]he Circuit Court erred in determining that the Wolfes were operating a storage yard on their property." This language is broad enough to encompass Lot 15, but, as demonstrated in n.4, supra, no viable issue remains in the case concerning the existence of a storage yard on Lot 15, so

actions of a former senior zoning inspector and not on where the vehicles were located on the Wolfes' property. Hence, the location argument is made for the first time on appeal and is not the subject of an assignment of error. Accordingly, we will not notice the argument. Buck, 256 Va. at 545-46, 508 S.E.2d at 885-86; American Woodmark, 250 Va. at 460, 464 S.E.2d at 153-54.

Third, the Wolfes argue that "[t]here can be no question that the provisions of both the 1959 and 1978 Ordinances, which allowed the parking of 'commercial vehicles' in residential districts, were ambiguous." While it is doubtful the Wolfes properly raised any objection below to the alleged ambiguity of the term "commercial vehicle," it is clear beyond doubt that no assignment of error addresses the trial court's putative failure to find the term ambiguous. Accordingly, we will not notice the Wolfes' argument on the point. Id.

Fourth, without always designating which lot they are talking about, the Wolfes continue to assert on appeal issues concerning the concepts of "grandfathered" and "lawful nonconforming" uses they raised unsuccessfully below. Yet, while the Wolfes' Assignment of Error No. 5

_____

Assignment of Error No. 2 can only be considered in relation to Lot 15A.

11

alleges that the trial court erred in concluding that Lot 15A was not "grandfathered," no assignment of error addresses the issues of "grandfathered" and "lawful nonconforming" uses with respect to Lot 15. Consequently, we will not notice those issues. Id.

### Commercial Vehicles

This brings us to the merits of the Wolfes' Assignment of Error No. 3 and the question whether their vehicles were "commercial vehicles" within the meaning of Fairfax County's zoning ordinances. The Wolfes began parking vehicles on their property in mid-1969 in connection with their business of installing underground storage tanks, lifts, lubrication equipment, air compressors, and other types of equipment for gasoline service stations. At that time, a zoning ordinance adopted in 1959 provided that "[t]here may be kept as an accessory use on any lot in [a residential] district not to exceed one commercial vehicle (other than a tractor trailer) operated by the occupant of the lot."

A new zoning ordinance adopted in August 1978 allowed the parking of one commercial vehicle on a residential lot but barred "any tractor trailer or vehicle exceeding one and one-half (1½) ton capacity." A further change in October 1978 added garbage trucks, dump trucks,

12

construction equipment, and cement-mixer trucks to the list of commercial vehicles prohibited from parking in residential districts.  The amendment also defined a "commercial vehicle" as "[a]ny vehicle with a rated carrying capacity of 1,500 pounds (3/4 ton) or more, and any vehicle, regardless of capacity, which displays advertising lettered thereon or which is licensed as a 'for hire' vehicle."

The trial court held that, because the Wolfes' vehicles "were used for commercial purposes," they "then and now are commercial vehicles," meaning they were commercial vehicles under both the 1959 and the 1978 versions of the zoning ordinance.  The Wolfes say this holding was "incorrect."

Citing Sellers v. Bles, 198 Va. 49, 53, 92 S.E.2d 486, 489 (1956), the Wolfes submit that, since the provisions of the zoning ordinances restrict the common law right of an owner "to use his property in his own way," the provisions must be strictly construed in favor of the individual claiming the right.  Continuing, and stressing a lack of definition of the term "commercial vehicle" in the 1959 zoning ordinance, the Wolfes say that while, "in its broadest sense, 'commercial' simply indicates a relationship to business or commerce, . . . in its more

narrow and restricted sense the term is limited to the purchase, sale, or trade of goods, commodities, and services." (Citing Hendricks v. American Employers Ins. Co., 176 So.2d 827, 832 (La. Ct. App. 1965) (emphasis added)). The Wolfes also say that, "construing the term most favorably to the landowner, [the] term 'commercial purpose' in [a] zoning ordinance [is] limited to businesses for the purchase, sale, exchange of goods and commodities, or the rendering of services." (Citing Reiser v. Meyer, 323 S.W.2d 514, 521 (Mo. Ct. App. 1959) (emphasis added)).

We fail to perceive how these definitions benefit the Wolfes. In their contracting business, they are obviously involved in "the rendering of services," and their vehicles are used directly in the performance of those services. Nor can we perceive any difference between a meaning of the term "commercial" based upon the element of rendering services, on the one hand, and the meaning assigned by the trial court based upon the element of use, on the other hand. To hold there is a difference would be to say that rendering services with a vehicle is not a use of the vehicle, and that would involve an unacceptable exercise in hair-splitting.

The meaning adopted by the trial court, viz., a commercial vehicle is one used for commercial purposes,

14

provides a simple, straightforward, and common sense test, fair to both sides of a zoning contest. Accordingly, we will apply the test here.

There can be no question that the Wolfes used their vehicles for commercial purposes. Indeed, they have admitted as much.[10] They also admitted before the BZA that the vehicles were commercial vehicles under the 1978 version of the zoning ordinance.[11] We think the vehicles were just as clearly commercial vehicles under the 1959 ordinance. Accordingly, we find no error in the trial court's ruling that the vehicles were commercial vehicles "then and now."

## Estoppel

The Wolfes' Assignment of Error No. 4 presents the question whether the trial court erred in determining that estoppel was inapplicable in this case. As noted previously, the Wolfes' estoppel argument is based upon the actions of a former senior zoning inspector of Fairfax County.

---

[10] In the hearing before the BZA on Lot 15, the Wolfes' counsel stated that the vehicles "are used for commercial purposes." The trial judge found that "[i]t's admitted [the vehicles] were used for commercial purposes."
[11] In the BZA hearing on Lot 15, the Wolfes' counsel was asked whether, under "the current definition," the vehicles in question were "commercial vehicles," and counsel replied, "yes."

The record shows that, on February 6, 1979, the inspector, Douglas S. Leigh, issued a notice of violation to the Wolfes for "[s]torage [on Lot 15] of construction equipment in a residential zone." Leigh later marked the notice "[c]leared 3-7-79." The Wolfes note on brief that Leigh "did not even mention any vehicle, although the same, or substantially the same, vehicles as those at issue were right there in front of him."

Leigh issued a second notice of violation on November 16, 1979, for the "parking [on Lot 15] of a dump truck and construction equipment in a residential zone." Leigh marked this notice "[c]leared 12-31-1979."

Leigh issued a third notice of violation on March 27, 1984, for "the storage [on Lot 15] of construction equipment, mortar pans, cinder blocks and plastic and metal pipe." There is no indication of record that this notice was "cleared," but the Wolfes state on brief that the violation was not prosecuted, and they again note that there was no mention in the 1984 notice "of any vehicle, although the vehicles at issue were right there."

The gist of the Wolfes' argument is that Leigh's failure to issue citations for the parked vehicles prior to the 1978 zoning amendments and his marking as "cleared" or failing to prosecute citations issued after the amendments

16

indicate his consistent interpretation of "the applicable Ordinances to permit the parking of the subject vehicles on the Wolfes' property."  And this, the Wolfes say, works an estoppel against the Zoning Administrator.

The Wolfes do not question the rule that estoppel does not apply to a local government when it acts in a governmental capacity, the capacity involved here. Westminster-Canterbury of Hampton Roads, Inc. v. City of Virginia Beach, 238 Va. 493, 503, 385 S.E.2d 561, 566 (1989); Gwinn v. Alward, 235 Va. 616, 621, 369 S.E.2d 410, 413 (1988).  The Wolfes say, however, that they are "not attempting to use estoppel in that sense — that is, to argue that the current Zoning Administrator is estopped from finding a violation based on a prior Administrator's failure to find one, if there were, in fact, an unlawful use from the start."  "Rather," the Wolfes say they "argue that the current Zoning Administrator is estopped from finding that the use had been unlawful throughout."

If one could detect a distinction between the senses in which the Wolfes are attempting to use estoppel in this case, it would be a distinction without a difference, and the result would be the same either way.  The Wolfes' thesis assumes that the use of their property was lawful at some point before the current Zoning Administrator found

17

that the use had been unlawful throughout.  The thesis also assumes that the use was previously lawful because the purported "interpretation" of Inspector Leigh, right or wrong, made it lawful.

The true situation, however, is that the use was unlawful throughout; ever since adoption of the 1959 ordinance, it has been unlawful to park more than one commercial vehicle on a residential lot in Fairfax County, and the Wolfes admittedly have consistently parked more than one.  And, concerning Leigh's purported interpretation, the rule is that "[n]o subordinate municipal official can bind the municipality to an incorrect . . . interpretation of the [municipality's] ordinances."  Dick Kelly Enters. v. City of Norfolk, 243 Va. 373, 382, 416 S.E.2d 680, 685 (1992).

### Conclusion

The determination of the Zoning Administrator concerning Lot 15 is presumed to be correct.  See Crestar Bank v. Martin, 238 Va. 232, 236, 383 S.E.2d 714, 716 (1989).  The decision of the BZA upholding the Zoning Administrator's determination and the trial court's judgment affirming the BZA's decision are also presumptively correct.  See Masterson v. Board of Zoning Appeals, 233 Va. 37, 44, 353 S.E.2d 727, 732-33 (1987).

18

The Wolfes have failed to overcome any of these presumptions.  Accordingly, we will affirm the judgment of the trial court with respect to Lot 15, including the trial court's reservation of the Wolfes' right to park on Lot 15 one commercial vehicle other than a tractor trailer.

Lot 15A — Record No. 991706

The Wolfes' Assignment of Error No. 1 and the BZA's sole assignment of error present the same question, viz., whether the trial court erred in ruling that the Zoning Administrator had standing to appeal the BZA decision in the certiorari proceeding involving Lot 15A.  The Wolfes' Assignments of Error Nos. 2 and 5 present the additional questions, respectively, whether the trial court erred in determining that the Wolfes were operating a storage yard on their property and that Lot 15A had never been a lawful use and was not grandfathered.  We find the standing issue dispositive.  Accordingly, we do not reach the Wolfes' additional questions.

With respect to the standing issue, Code § 15.2-2280 authorizes localities to adopt zoning ordinances and Code § 15.2-2286(A)(4) authorizes localities to include in the ordinances provisions for the appointment of a zoning administrator who "shall have all necessary authority on behalf of the governing body to administer and enforce the

19

zoning ordinance. [This] authority shall include . . . insuring compliance with the ordinance, bringing legal action, including injunction, abatement, or other appropriate action or proceeding." Code § 15.2-2314 provides that "any officer, department, board or bureau of the locality, may present to the circuit court for the county or city a petition [for a writ of certiorari] specifying the grounds on which aggrieved."

Section 18-101(1) of the Fairfax County Zoning Ordinance provides that "[u]nless otherwise specifically qualified, the provisions of this Ordinance shall be enforced by the Zoning Administrator, who shall serve at the pleasure of the Board of Supervisors." Section 18-101(3) of the ordinance provides that "[t]he Zoning Administrator shall have all necessary authority on behalf of the Board [of Supervisors] to administer and enforce the provisions of this Ordinance. Such authority shall include . . . the ability to bring legal action to insure compliance with the provisions [of the ordinance], including injunction, abatement, or other appropriate action or proceeding."

Gwinn, as we will refer to the Zoning Administrator hereinafter, emphasizes the "all necessary authority" language contained in Code § 15.2-2286(A)(4) and in § 18-

20

101(3) of the Fairfax County Zoning Ordinance relating to the administration and enforcement of the ordinance. Gwinn also puts great emphasis upon the language of Code § 15.2-2314, which authorizes "any officer" of a locality to present a certiorari petition to a circuit court.

Gwinn argues that nothing in the zoning ordinance requires that the Board of Supervisors authorize her to present a petition for a writ of certiorari or that the board must be a co-litigant in any action she brings. Rather, she says, the zoning ordinance unambiguously grants and delegates to her "all necessary authority" to bring appropriate legal actions to ensure compliance with the zoning ordinance, including the presentation of a petition for certiorari to the circuit court pursuant to Code § 15.2-2314.

We do not agree that Gwinn possessed such authority in the present case. While she emphasizes the "all necessary authority" language of Code § 15.2-2286(A)(4) and § 18-101(3) of the zoning ordinance, we place the emphasis where it properly belongs, and that is upon the language "on behalf of the local governing body" or "on behalf of the Board [of Supervisors]," which appears immediately after the "all necessary authority" language in the statute and the ordinance, respectively. With the emphasis so placed,

21

the necessary conclusion is that Gwinn is authorized to present a petition for certiorari only when such action is taken on behalf of the Board of Supervisors.

Nor is the conclusion altered by the language of Code § 15.2-2314 which permits "any officer" of a locality to present a petition for certiorari to the circuit court from a decision of a board of zoning appeals. Code § 15.2-2314 must be read in pari materia with Code § 15.2-2286(A)(4) and § 18-101(1) of the zoning ordinance, "since they relate to the same subject." Taylor v. Shaw & Cannon Co., 236 Va. 15, 19, 372 S.E.2d 128, 131 (1988). When so read, there is imposed upon "any officer" taking action under Code § 15.2-2314 the requirement that the action be on behalf of the local governing body.

Here, there is a clear admission in Gwinn's motion for nonsuit and a clear judicial finding in the nonsuit order that Gwinn's filing of the petition for certiorari relating to Lot 15A was not on behalf of the Board of Supervisors, and that is conclusive of the issue. Accordingly, we hold that the trial court erred in finding that Gwinn had standing to file the certiorari petition in question.

Gwinn's counsel expressed the concern in the trial court that if Gwinn was held to lack standing in this case then it would be necessary to have "a specific

authorization or resolution entered each time by the Board of Supervisors for any case to be appealed by the Zoning Administrator."  We do not hold in this case, however, that Gwinn must secure authorization from the Board of Supervisors each time she decides it is necessary or appropriate to present a petition for certiorari.  We hold only that, under the particular circumstances of this case, she did not possess the authority to file the petition for certiorari relating to Lot 15A.

Gwinn cites several of our prior decisions in each of which, she says, "a zoning administrator was a participant in proceedings before the circuit court and a party to the subsequent appeal," namely, McNair v. Clatterbuck, 212 Va. 532, 186 S.E.2d 45 (1972), WANV, Inc. v. Houff, 219 Va. 57, 244 S.E.2d 760 (1978), Gwinn v. Alward, supra, and Gwinn v. Collier, 247 Va. 479, 443 S.E.2d 161 (1994).  None of these decisions, however, involved the question that is presented here, viz., whether a zoning administrator has standing to file a petition for certiorari from a decision of a board of zoning appeals when such filing is not on behalf of the local governing body.

Accordingly, we will reverse the judgment of the trial court with respect to Lot 15A, dismiss Gwinn's petition for

certiorari, and reinstate the decision of the BZA

concerning Lot 15A.

Record No. 991705 — <u>Affirmed</u>.
Record No. 991706 — <u>Reversed and dismissed</u>.

24