Present:  All the Justices

PAUL PATTERSON

OPINION BY

v.  Record No. 981185    JUSTICE LAWRENCE L. KOONTZ, JR.

April 16, 1999

DANA BRUCE PATTERSON, EXECUTOR
OF THE ESTATE OF ERNESTINE
PATTERSON, ET AL.

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Arthur W. Sinclair, Judge Designate

In this appeal, we consider whether the trial court properly determined that a certificate of deposit registered in the joint names of a husband and wife with right of survivorship was the sole property of the wife and, upon her death, became part of her estate.

BACKGROUND

On May 1, 1995, nineteen days before her death, Ernestine J. Patterson was informed by her husband, Paul Patterson, that he had found a bank in Richmond that was paying a higher interest rate than she was currently receiving on money she had on deposit with Crestar Bank in Charlottesville.  Ernestine Patterson, accompanied by her daughter Carolyn Dale Patterson, went to Crestar Bank and endorsed for payment a $100,000 certificate of deposit (the Crestar certificate) registered in her name alone.  Crestar Bank issued a cashier's check payable to Ernestine Patterson in the face amount of the certificate.  Ernestine Patterson endorsed this check and permitted Paul

Patterson to take the check to Citizens Federal Bank in Richmond.

On that same day, Paul Patterson deposited the funds in Citizens Federal Bank and obtained a $100,000 certificate of deposit (the Citizens Federal certificate) titled "*PAUL PATTERSON OR ERNESTINE PATTERSON JTWROS*." Ernestine Patterson never signed a signature card or otherwise ratified the creation of a joint interest in the Citizens Federal certificate.

Ernestine Patterson died testate on May 20, 1995. By her will, she devised her separate real property to Carolyn Patterson and Dana Bruce Patterson, her son. The residue of her estate was divided and distributed two-thirds to Janet P. Steppe, another daughter, and one-third to Paul Patterson. Dana Patterson qualified as executor of his mother's estate on May 23, 1995.

This suit originated as a bill of complaint filed by Paul Patterson on November 27, 1995, seeking an accounting of his deceased wife's augmented estate in order to determine his elective spousal share of that estate. Code § 64.1-16.1. The bill of complaint named Paul and Ernestine Patterson's three children as respondents; however, only Dana Patterson and Janet Steppe (hereafter, the respondents) entered appearances. In addition to their answer, the respondents filed a cross-bill on behalf of the estate seeking return of the $100,000 proceeds

2

from the Crestar certificate plus the accrued interest, asserting that the transfer of these funds to the Citizens Federal certificate was the result of undue influence and coercion by their father. In the alternative, they contended that the transfer did not constitute a valid gift.

On May 14, 1997, the respondents filed a motion to dismiss the bill of complaint asserting that a prior order extending the time in which Paul Patterson could make an election to take a spousal share had not been timely entered. The trial court sustained the motion and dismissed the bill of complaint with prejudice.[1] The cross-bill remained pending on the trial court's docket.

On August 11, 1997, the trial court held a hearing on the cross-bill. At that hearing, Carolyn Patterson testified about the extended estrangement between Paul Patterson and the Pattersons' children. She further testified that her mother had been in poor health and had suffered from Parkinson's disease, cancer, and glaucoma. These infirmities interfered with Ernestine Patterson's ability to transact her affairs, so that Carolyn Patterson had to assist her mother in paying bills and writing letters.

---

[1] Paul Patterson has not assigned error to this aspect of the trial court's judgment.

Carolyn Patterson further testified that on May 1, 1995, her father told her to drive her mother to a branch of Crestar Bank where they would meet him to transact some business. On the way to the bank, Ernestine Patterson told her daughter "to 'watch and see what [I] sign[].'" When they arrived at Crestar Bank, Paul Patterson met them in the parking lot and had Ernestine Patterson endorse the Crestar certificate, which he then took into the bank. A short time later he returned with the cashier's check for the proceeds, which Ernestine Patterson also endorsed. Paul Patterson then left in his own vehicle, and Carolyn Patterson drove her mother home.

Dana Patterson testified that his mother's parents had transferred real property to his mother during their lifetimes as her separate estate. He further testified that she had received monetary inheritances from her parents upon their deaths. Neither Dana Patterson nor Paul Patterson was able to testify about the amount of these inheritances.

Mary Catherine Wheeler, a friend and former co-worker of Ernestine Patterson's, testified that "Ernestine was afraid of Paul. She also loved him very much." Shortly before her death, Ernestine Patterson told Wheeler "that she wanted her property to go to her children and that she had a certificate and she wanted her children to have that." Wheeler further testified

4

that Ernestine Patterson told Wheeler that "Paul had forced her to go to the bank and sign the certificate over to him."

Paul Patterson testified that he and his wife maintained separate checking accounts and divided responsibility for their living expenses. He further testified that he controlled the couple's investments and that he would "invest a hundred thousand dollars ($100,000) in my name and then I would put money in Ernestine's name in the same institution . . . [s]o that they would be insured" up to the maximum FDIC insurance on each account. He conceded that Ernestine Patterson had inherited money, in addition to real estate, from her parents and testified that "I have no idea" of the amount involved.

Regarding the May 1, 1995 transactions, Paul Patterson testified that on the prior evening when the couple was alone Ernestine Patterson "told me [that] I might as well get [the Crestar certificate] and put it in my own name." He further testified that he "would not take Ernestine's name off" a new certificate of deposit, so he used the proceeds of the Crestar certificate to obtain the Citizens Federal certificate in their names jointly with right of survivorship.

In an opinion letter dated February 3, 1998, the trial court reiterated a prior ruling, which had not to that point been incorporated into the record, that there was insufficient evidence to prove that Paul Patterson had obtained the Citizens

Federal certificate from Ernestine Patterson through undue influence, coercion, or duress. The trial court further found, however, that Paul Patterson's own evidence established that the Crestar certificate was his wife's sole property. That being so, the trial court concluded that "Mrs. Patterson endorsed the [Crestar] certificate for the sole purpose of permitting her husband to reinvest the proceeds for a better yield and that no gift was involved." Accordingly, in the final order, incorporating by reference the reasoning of its opinion letter, the trial court entered judgment for the respondents and awarded $100,000 plus the accrued interest from the Citizens Federal certificate to the estate. We awarded Paul Patterson this appeal.

### DISCUSSION

Paul Patterson first maintains that the trial court erred in finding that the Crestar certificate of deposit was Ernestine Patterson's sole property. Rather, he asserts that the evidence supports his contention that the certificate was a marital asset and that Ernestine Patterson was merely a "nominal holder." Swan v. Swan's Ex'r, 136 Va. 496, 519, 117 S.E. 858, 865 (1923). We disagree.

Although the burden was on the respondents to show that the funds originally deposited in Ernestine Patterson's name in Crestar Bank were her sole property, the trial court looked

6

principally to Paul Patterson's own testimony to establish that fact.  Specifically, the trial court found his testimony that his wife told him that she wanted him to have the money on deposit at Crestar Bank "leaves no doubt as to the ownership of the Crestar certificate."  "No litigant can successfully ask a court or jury to believe that he has not told the truth.  His statements of fact and the necessary inferences therefrom are binding upon him."  Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922).  Thus, while Paul Patterson may have sought to establish that his wife was merely a nominal holder of a marital asset, his case cannot rise above his own testimony that the Crestar certificate was solely subject to the control and wishes of his wife.  This evidence, in conjunction with the evidence presented by the respondents, supports the trial court's determination that the Crestar certificate was Ernestine Patterson's sole property.

Paul Patterson next contends that Code § 6.1-125.5 mandates reversal of the trial court's decision because under that statute "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the

7

account is created."[2]  He further cites Code § 6.1-125.3 which provides that "a joint account between persons married to each other shall belong to them equally . . . unless . . . there is clear and convincing evidence of a different intent."  Relying on these statutory provisions, he argues that in the absence of clear and convincing evidence to the contrary he is entitled to a presumption that his wife intended the Citizens Federal certificate to belong to him at her death.  He argues that because the trial court found no undue influence, coercion, or duress, there necessarily was no clear and convincing evidence that his wife did not intend for the certificate to belong solely to him at her death.

Paul Patterson's reliance upon these statutes is misplaced. These statutes, and particularly the presumption they provide which he seeks to assert here, are not applicable under the facts of this case because there is no evidence in the record that Ernestine Patterson was ever aware of the nature of the Citizens Federal certificate.  She did not sign a signature card or otherwise ratify the creation of a joint interest in this certificate.  Moreover, there is simply no evidence in the record that Ernestine Patterson was aware of the existence of

---

[2]Code § 6.1-125.1(1) provides that "'*Account*' means a contract of deposit of funds between a depositor and a financial institution, and includes a . . . certificate of deposit."

8

this certificate even though the proceeds of her Crestar certificate were used to create it.  Thus, the dispositive issue before the trial court was whether Ernestine Patterson made a gift of all or part of her Crestar certificate to her husband. Absent such a gift, Paul Patterson has no right to the Citizens Federal certificate.

The elements necessary to make a gift inter vivos of personal property are well established.  See generally Taylor v. Smith, 199 Va. 871, 874, 102 S.E.2d 160, 162 (1958).  Here, the critical issue in dispute, whether Ernestine Patterson intended to make a gift to her husband, was one of fact to be determined by the trial court.  In such instances, great deference is accorded a trial court's factual findings.  This is so because the judge, as fact finder, sees and hears the witnesses and, therefore, is better able to determine their credibility and weigh their testimony.  Tuomala v. Regent University, 252 Va. 368, 375, 477 S.E.2d 501, 505-06 (1996). Accordingly, we hold that the trial court's determination that Ernestine Patterson did not intend to make a gift to her husband when she endorsed for payment the check representing the proceeds from her Crestar certificate is not plainly wrong or without adequate evidence to support it and, thus, will not be disturbed on appeal.  Code § 8.01-680; Tauber v. Commonwealth, 255 Va. 445, 452, 499 S.E.2d 839, 843 (1998).

9

## CONCLUSION

For these reasons, we will affirm the judgment of the trial court awarding $100,000 plus accrued interest to the estate.

Affirmed.