# CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of
Anne M. Nash,
deceased

August 10, 2004

Case No. (Fiduciary) 64695

BY JUDGE JONATHAN C. THACHER

This matter came on July 16, 2004, for a hearing on William A. Nash's Exceptions to the Commissioner's Report. After considering counsels' arguments and reviewing the applicable law, the Court reaches the findings and conclusions stated below.

## I. *Background*

This suit arises out of a dispute over the rightful ownership of a bank account once belonging to Anne M. Nash. See Exceptions to the Commissioner's Report (hereinafter "ECR" ) at & 2. Mrs. Nash died testate on December 29, 1999. *Id*. at & 1. In her will, Mrs. Nash named her three children, Carole Guzzetta, William A. Nash, and Philip Seminara, as equal beneficiaries and co-executors of her Estate. *Id*. at & 1.

In 1997, Mrs. Nash sold her home in New Jersey and moved in with Mrs. Guzzetta and her family in Alexandria, Virginia. *Id*. at & 5. At some point after moving to Virginia, Mrs. Nash, accompanied by Mrs. Guzzetta, opened a bank account at a local Crestar (now known as SunTrust) branch. *Id*. This is

the account at the crux of these proceedings. Mrs. Guzzetta claims that she and her mother decided to open this account as a Payable on Death, or P.O.D. account, with Mrs. Guzzetta as the beneficiary. *Id*.

In February of 2000, Mrs. Guzzetta returned to the Crestar branch with Mrs. Nash's death certificate. See Response to Exceptions to the Commissioner's Report (hereinafter "RECR") at 2. A bank employee gave Mrs. Guzzetta a check for the full amount of the account, which was $41,695.25. See ECR at & 2. In addition to this check, Mrs. Guzzetta received a document (hereinafter "debit memo") from the bank stating that there was a deduction from the account and the reason for this deduction was "Customer passed on P.O.D. — Carole Guzzetta." See Commissioner's Report Exhibit 2.

The three children were qualified as co-executors in June of 2000. See RECR at 2. According to Mr. Nash, he requested that the Commissioner of Accounts serve a subpoena duces tecum to SunTrust for all documents referencing the signature card for the account in question. See ECR at & 3. Any efforts to recover this document have proved futile, as SunTrust asserts that the signature card appears to be lost, apparently forever. *Id*.

## II. *Procedural History*

Mrs. Guzzetta modified the Inventory for Decedent's Estate Report so that it contained the SunTrust account in question. See Inventory for Decedent's Estate at 1. This addition was included under the "Multiple Party Account" section of the Inventory. *Id*. Mr. Nash subsequently filed objections to this modified Inventory filed by Mrs. Guzzetta and Mr. Seminara. See ECR at & 2.

After submitting supporting memoranda and a subsequent hearing on Mr. Nash's objection, the Commissioner of Accounts filed his report (hereinafter "CR") on June 17, 2004. See ECR at & 4, CR at 4. In his report, Jesse B. Wilson, III, the Commissioner, concluded that the account in question was a P.O.D. account payable to Mrs. Guzzetta upon the death of Mrs. Nash. See CR at 3. In arriving at this conclusion, the Commissioner found three facts persuasive. One, the testimony of Mrs. Guzzetta, who provided the Commissioner with an affidavit stating that she was there when her mother opened the account and it was opened as a P.O.D. with her as the beneficiary. *Id*. at 1. Two, that the debit memo explicitly stated that the account was a P.O.D. account. *Id*. Finally, and of great import to the Commissioner, were the actions of the bank employees. *Id*. at 3. The Commissioner placed a great deal of weight on the circumstances surrounding the withdrawal; namely that Mrs. Guzzetta arrived at the bank with a death certificate, that the bank employees readily closed the account for Mrs. Guzzetta and willingly handed over a

check for the full balance of the account, and that a debit memo was prepared for her. *Id.* To the Commissioner, these actions indicated the existence of a P.O.D. account at SunTrust for the benefit of Mrs. Guzzetta. *Id.* at 3, 4.

## III. *Summary of Arguments*

Mr. Nash filed his Exceptions to the Commissioner's Report with this Court on July 1, 2004. See ECR at 1. In this report, Mr. Nash outlines several reasons why the Commissioner's findings were flawed. Namely, Mr. Nash takes issue with the Commissioner's relying on the testimony of Mrs. Guzzetta and the reliance on the debit memo. *Id.* at & 5. Also, Mr. Nash posits that, just because the bank employees' may have acted as though the account was a P.O.D., the liability to the bank in this situations is limited, and therefore any weight given to these employees' actions should also be limited. *Id.* at & 9. More importantly, Mr. Nash points to the lack of a signature card for the account. *Id.* at & 14. According to Mr. Nash, this signature card not only is necessary to establish Mrs. Nash's intent in regards to the account, but it also constitutes the contract between the depositor and the bank, and, without it, one cannot suppose what kind of account was opened by Mrs. Nash. *Id.* at && 12, 14. Mr. Nash asserts that none of the bank statements from the account at SunTrust made any mention of "P.O.D." or list Mrs. Guzzetta as a beneficiary. *Id.* at & 15. Lastly, Mr. Nash points out that Mrs. Guzzetta changed the Inventory of the Decedent's Estate twice and did not make Mr. Nash aware of the SunTrust account until eight months after receiving the balance. *Id.* at 6. Mr. Nash also asks this Court to award him attorney's fees, asserting that he is acting to protect the Estate and should be allowed to pay these fees out of the Estate. *Id.* at & 17.

In response to these exceptions, Mrs. Guzzetta and Mr. Seminara argue that there is sufficient evidence to support the Commissioner's holding that the account was a P.O.D. to be paid to Mrs. Guzzetta and no evidence to contradict this holding. See RECR at & 5. Their response states that the absence of the signature card is simply a fact and that this fact cannot be dispositive of the entire issue. *Id.* at & 6. The crux of their response is that the bank personnel, who closed Mrs. Nash's account and gave a check to Mrs. Guzzetta, were acting within the protocol provided by the Virginia Legislature and that there is no evidence to the contrary; basically, if the bank employees' actions indicated that this was a P.O.D. account, it was a P.O.D. account. *Id.* at & 5. Lastly, Mr. Seminara and Mrs. Guzzetta argue that because Mr. Nash initiated this matter, the Estate should bear their attorney's fees. *Id.* at 10.

## IV. *Analysis*

The Supreme Court of Virginia has held that a Commissioner's report should be sustained unless the trial court concludes that the Commissioner's findings are not supported by the evidence. *Hill v. Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984). While a trial court is given discretion to review the Commissioner's findings, "it cannot arbitrarily disturb the report, if it is supported by sufficient proof." *Hudson v. Clark*, 200 Va. 325, 329, 106 S.E.2d 133 (1958). However, it is presumed that as a judge of both law and facts, "the chancellor is more competent to pass upon the evidence and draw correct conclusions from it than the commissioner." *Hitt v. Smallwood*, 147 Va. 778, 778-85, 133 S.E. 503 (1926).

This Court must determine whether Mrs. Guzzetta was entitled to the balance in the SunTrust account or, in the alternative, if these funds should be paid to the Estate of Mrs. Nash. There are several pertinent statutes dealing with multiple-party accounts that have been enacted by the Virginia Legislature which are cited by each party to this matter. The Legislature has defined an "account" as a contract of deposit of funds between a depositor and a financial institution. Va. Code Ann. § 6.1-125.1.1. A "party" has been defined by the Legislature as "a person who, *by the terms of the account,* has a present right" to payment from a multiple-party account. A P.O.D. payee is a party only after the account becomes payable to him or her by reason of his or her surviving the original payee. Va. Code Ann. § 6.1-125.1.7 (emphasis added). A "P.O.D. account" is an account payable on request to one person during lifetime and on his or her death to one or more P.O.D. payees, while a "P.O.D. payee" is a person designated on a P.O.D. account as one to whom the account is payable on request after the death of one or more persons. Va. Code Ann. §§ 6.1-125.1.10, 6.1-125.1.11. A P.O.D. account belongs to the original payee during his or her lifetime and not to the P.O.D. payee or payees. Va. Code Ann. § 6.1-125.3.

Furthermore, the Legislature has superceded previous common-law principles in stating that the presumption is that sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. Va. Code Ann. § 6.1-125.5. Virginia Code § 6.1-125.6 states that the provisions of § 6.1-125.5 as to rights of survivorship are determined by the *form of the account* at the death of a party. Va. Code Ann. § 6.1-125.6 (emphasis added). The Virginia Legislature also has provided that payment made from a multiple-party account discharges the financial institution from "all claims for amounts so paid whether or not the payment is consistent with the beneficial

ownership of the account as between parties, P.O.D. payees, or beneficiaries, or their successors." Va. Code Ann. § 6.1-125.13.

The Virginia Supreme Court has held that a signature card constitutes the contract between the depositor of money and the bank in which it is deposited, and it controls the terms and disposition of the account. *Colley v. Cox*, 209 Va. 811, 814, 167 S.E.2d 317, 319 (1969). The rights of the parties in situations similar to the present case must be determined by rules pertaining to the interpretation of contracts. It is for this reason that the details of the signature card become significant. *Sturgill v. Virginia Citizens Bank*, 223 Va. 394, 398, 291 S.E.2d 207, 208 (1982) (citing Colley, 209 Va. at 814, 167 S.E.2d at 319). Where the funds in question were originally held in an individual account and there was no signature card or other document ratifying the existence of a joint interest in, or survivorship benefits of, an account, the presumption of survivorship provided in Virginia Code § 6.1-125.5 is inapplicable. *Patterson v. Patterson*, 257 Va. 558, 563, 515 S.E.2d 113, 117 (1999). The Virginia Supreme Court has further held that no survivorship account was created where there were no instructions to the bank when the account was opened or contractual language on the signature card showing an intention to have the account pass to the survivor. *Thurston v. Maggard*, 220 Va. 815, 819, 263 S.E.2d 64, 65 (1980).

The Virginia Supreme Court has held that:

> where there is a clear expression of an intention that the survivor should become the owner of the account upon the death of the depositor, we have upheld that intention. Where such an intention is not fully disclosed by the terms of the deposit, but clearly appears when the terms of the deposit are considered along with other evidence, the intention has been upheld. Where a contrary intention has been shown to exist, the court has excluded the alleged rights of the survivor.

*Colley*, 209 Va. at 817, 167 S.E.2d at 321. However, in the cases decided by the Virginia Supreme Court, the tenor of the language of the deposit has been consistent with and indicated the creation of an account that would be payable to and become the account of the survivor. *Id.*

In the present case, there is no signature card, and therefore no contract for this Court to examine between the bank and Mrs. Nash, the depositor of the funds. There are, however, other factors that the Commissioner used in concluding that the account was of the P.O.D. variety. One factor was the testimony of Mrs. Guzzetta. However, under Virginia law, this testimony must be corroborated by other evidence in order to be deemed competent. Va. Code

Ann. § 8.01-397 (hereinafter "Dead Man's Statute" ) (deeming an interested party's uncorroborated testimony incompetent).

The Commissioner attempts to cure this defect by aligning this testimony with two other events. First, the Commissioner looks to the debit memo, which stated that the "customer has passed" and that the account is a P.O.D. account. However, Mrs. Guzzetta failed to authenticate this piece of evidence. "Before any writing may be introduced into evidence, it must be authenticated," which is the providing of an evidentiary basis sufficient for the court to "conclude that the writing came from the source claimed." *Ragland v. Commonwealth*, 16 Va. App. 913, 919, 434 S.E.2d 675, 679 (1993) (citation omitted). "Authentication is merely the process of showing that a document is genuine and that it is what its proponent claims it to be." *Owens v. Commonwealth*, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990). "The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). In the present case, there is absolutely no authentication of this debit memo. No bank employees testified as to whether this document was produced by the bank or whether this document is created in the ordinary course of business. Other than the testimony of Mrs. Guzzetta, which must be viewed as incompetent given the Dead Man's Statute, there is no other evidence set forth which authenticates this writing. Therefore, this debit memo is not admissible into evidence, which is what the Commissioner did over Mr. Nash's exceptions.

Secondly, the Commissioner placed a great deal of weight on the actions of the bank's employees, concluding that the bank's employees must know the law and would only act within the scope of said law. This assumption seems ill-advised, especially in light of Virginia Code § 6.1-125.13. This statute explicitly disavows the bank from any liability in regards to the withdrawal of these funds. If, as the Commissioner suggests, the bank employees were aware of all relevant Virginia banking law, one must also assume that the employees were aware of this provision as well. Therefore, if the actions of the banks employees are to be examined, they must be viewed through the prism of all pertinent statutes.

*Patterson* controls this matter. In *Patterson*, a husband took money from a certificate of deposit owned solely by his wife and deposited the funds into a joint tenants with rights of survivorship account under which both he and his wife were the named parties. *Patterson*, 257 Va. at 560, 515 S.E.2d at 114. Mrs. Patterson died a few months later, and Mr. Patterson claimed the funds in the joint account were his. *Id*. The executors of Mrs. Patterson's estate brought suit to recover the funds from the joint account in question, asserting these

funds were the sole property of Mrs. Patterson and belonged to the Estate. *Patterson*, 257 Va. at 561, 515 S.E.2d at 114. The Supreme Court of Virginia placed a great deal of weight on the fact that there was no evidence that Mrs. Patterson intended these funds to be placed in a joint account or that she intended that these funds be passed on to Mr. Patterson when she died, as there was no signature card and or other documentation that Mrs. Patterson intended to open an account with a survivorship feature, such as a P.O.D. *Patterson*, 257 Va. at 564, 515 S.E.2d at 116. The Virginia Supreme Court held that, absent some sort of manifestation of Mrs. Patterson's intent, these funds should be awarded to the Estate. *Patterson*, 257 Va. at 564, 515 S.E.2d at 117.

One can draw several analogies from *Patterson* to the present case. In each case, funds that belonged solely to the deceased were deposited into a bank account. Much like the lack of proof exhibiting the intent of Mrs. Patterson in *Patterson*, there is no signature card, or any other written document, which exhibits the intent of Mrs. Nash in regards to the SunTrust account. The only evidence that is present in the instant case is the testimony of Mrs. Guzzetta, which must be deemed incompetent in light of the Dead Man's Statute, and the debit memo, which is an unauthenticated writing and therefore inadmissible. Otherwise, there is absolutely no evidence that this was a P.O.D. account. There is no signature card and, therefore, no record of the contract between Mrs. Nash and the bank. The bank statements for the account do not list it as a P.O.D. account or make mention of Mrs. Guzzetta as a beneficiary. This was not a joint account, and therefore any presumption of survivorship which Virginia Code § 6.1-125.5 provides is inapplicable to the present set of facts.

Regarding attorney's fees, in the event that an executor, such as Mr. Nash, requires counsel in the execution of his duties, reasonable expenses incurred by employment of counsel are assessable against the Estate, provided that the executor is acting in good faith and there is some reasonable ground that the employment of counsel will aid the executor in carrying out his duties. *Stull v. Harvey*, 112 Va. 816, 822, 72 S.E. 701, 703 (1911). Mr. Nash employed counsel to protect assets belonging to the Estate of Mrs. Nash in his capacity as an executor. Therefore, all reasonable expenses incurred by the employment of counsel in this matter should be paid out of the Estate, pursuant the court's ruling in *Stull*.

## V. *Conclusion*

There is no admissible evidence or competent testimony which illustrates that this was a P.O.D. account. There is no admissible evidence or competent testimony which illustrates Mrs. Nash's intention regarding this account. Therefore, this Court sustains Mr. Nash's exceptions to the Commissioner's report. This Court orders Mrs. Guzzetta to pay to the Estate $41,695.29 withdrawn from the SunTrust account, plus interest computed at the legal interest rate from February 4, 2000, the date of the withdrawal.

Using the court's rationale in *Stull*, all reasonable expenses incurred by Mr. Nash in employing counsel in this matter are assessable against the Estate, as he was acting in good faith, had reasonable grounds to seek counsel, and was acting as an executor of Mrs. Nash's Estate. Mrs. Guzzetta's request for attorney's fees to be paid out of the Estate is denied, as she was not acting as an executor of the Estate of Mrs. Nash.