PRESENT: Goodwyn, Mims, Powell, Kelsey, McCullough, and Chafin, JJ., and Millette, S.J.

NORTHERN VIRGINIA KITCHEN,
BATH & BASEMENT, INC., ET AL.

|  | OPINION BY |
| --- | --- |
| v. Record No. 200335 | SENIOR JUSTICE LEROY F. MILLETTE, JR. |
|  | April 15, 2021 |

WILLIAM ELLIS

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

This appeal arises from a jury's award of compensatory and punitive damages stemming

from the appellants' intentional statutory torts of racial harassment and stalking. The appellants

conceded liability and therefore the narrow issue before us is whether the evidence of emotional

distress alone, without any evidence of monetary damages, was sufficient to support the jury's

award. For the reasons explained below, we will affirm the circuit court's judgment.

I.  BACKGROUND

John Powell ("Powell"), a white man, is the president and owner of Northern Virginia

Kitchen, Bath & Basement, Inc., ("NVKBB"), a company that specializes in remodeling or

constructing kitchens, baths, and basements. In May 2017, William Ellis ("Ellis"), a black man,

moved from Mississippi to Virginia and began working for Powell and NVKBB as an

independent contractor. In July 2017, Ellis began working on a contract Powell entered into with

a certain homeowner (referred to as "Ms. C" or the "Homeowner") to build a basement

bathroom. However, Powell and Ms. C terminated their contract due to a dispute. Ms. C

subsequently asked Ellis, and he agreed, to finish the bathroom project and to undertake

additional renovation work in her basement. Powell became upset that Ellis continued to work

for Ms. C. He left two angry voicemails on Ellis's cellular telephone stating, among other

things, that Ellis had made "a ni***er move" that would not work out well for him; that "we don't play that s**t down here in Virginia, boy;" that he had "better not see [Ellis] over there [at Ms. C's house];" and he had "motorcycle clubs and gangs around" and that Ellis was in "the wrong part of town to be playing that dirty s**t . . . ." Powell also said that he had hired Ellis "for his color;" because he is "black" and "a minority," but that Ellis had "pulled the same s**t that f***ing black people around here do" and had "ruined it for the next black man." Ellis expressly told Powell to stop calling him. Powell nevertheless sent berating text messages to Ellis.

By October 2017, the situation between NVKBB, Powell, and Ms. C had escalated, including instances in which Ms. C posted Powell's messages to Ellis on social media and certain websites in which customers rate a business. NVKBB subsequently filed a complaint against Ms. C, and included Ellis, alleging defamation and conspiracy to injure a trade or business. Ellis filed a counterclaim against NVKBB and Powell, individually, alleging, as relevant here, racially motivated harassment in violation of Code § 8.01-42.1 and stalking in violation of Code § 8.01-42.3.

The circuit court subsequently dismissed NVKBB's defamation complaint against Ellis with prejudice. Ellis prosecuted his counterclaim against NVKBB and Powell, which resulted in the judgment from which they now appeal. Due to NVKBB and Powell's failures to comply with discovery orders, the circuit court issued monetary sanctions against them and granted partial summary judgment against Powell establishing his liability for violating Code §§ 8.01-42.1 and -42.3. NVKBB subsequently stipulated to liability thereby leaving Ellis's evidence of damages as the sole matter for the jury's consideration.

At trial, Ellis told the jury that after he received the voice messages, he wanted nothing to do with Powell because "ni***r" was "a hurting word" to him. Ellis stated that when he listened to Powell's first voicemail, his nephew was within earshot and it affected Ellis because his nephew "shouldn't be hearing those kind[s] of things." Ellis further testified that Powell's voice messages made him "upset" and "kind of scared" because Powell "threatened that he was going to do something to me" and "he threatened me with motorcycle gangs and clubs, and . . . when a man say[s] something . . . my belief [is] that he really will follow through with it."

With regard to Powell's comments about his motorcycle clubs and gangs, Ellis also related that "for a period of time, every time I go down the road, I see a motorcycle, I just have a nervous feeling come across, and I had to -- watch them till they get out of sight . . . especially when I'm on the interstate." Ellis described how he changed his schedule so he would not be on the same roads that he thought Powell and his associates would be traveling, stating, "I didn't drive at night . . . [b]ecause I didn't want to run across . . . nobody . . . that could communicate with Mr. Powell." Ellis said that he tried to avoid Leesburg and Chantilly for that same reason.

Ellis further recounted that he changed his work routine at Ms. C's house because of his fear of Powell, stating that he "tried to finish [by] a certain part of the day and [if] it roll over into too late, I had to stay there overnight. Just work overnight to leave the next morning." Ellis explained that he was afraid Powell would come near Ms. C's house to try and catch him on the road "to do something to me . . . my thought was he was going to . . . do something to hurt me." Ellis confirmed that he told his sister, friends and Ms. C that he was afraid of Powell due to his threatening behavior.

Ellis reiterated that Powell's statements describing his work for Ms. C as "a ni***r move" and calling him "boy" upset him "[b]ecause that's what a lot of people back home called

3

the guys that work[ed] for them on the plantation, boys . . . [s]o I guess [Powell] thought since I'm from Mississippi, he can own me."

On cross-examination, Ellis responded that although he installed security cameras at his home because he was afraid of Powell, he did not call the police, contact a court or seek legal advice about Powell's voice and text messages. He testified that he did not take any other action because he thought the situation "would just go away" or "blow over." However, the matter did not go away or blow over, explained Ellis, because, after Powell's voice messages, Powell continued to contact Ms. C about Ellis and to berate Ellis via text messages. "Then," said Ellis, Powell "involve[d] me in a lawsuit I didn't have anything to do with" and "therefore, I made a counterclaim" against NVKBB and Powell. Ellis further agreed that although Powell's messages made him feel nervous and afraid when he saw motorcycles, he did not seek any professional help, such as a seeing a psychiatrist, counselor or the clergy in his church. At the conclusion of NVKBB and Powell's cross-examination, Ellis confirmed that he based his claims on Powell's use of the words "ni***r" and "boy" and that Powell's messages made him feel "intimidated . . . harassed . . . [and] threatened . . . ."

At the close of all the evidence, NVKBB and Powell moved to strike the evidence as insufficient for anything other than nominal damages because Ellis had failed to demonstrate that he had sought medical treatment or incurred any loss of wages or other monetary damages. They asserted that Ellis's evidence demonstrated nothing more than hurt feelings, rather than some quantifiable monetary damage.

The circuit court denied NVKBB and Powell's motions to strike and submitted the evidence to the jury, which returned a verdict in favor of Ellis, awarding, for each of Ellis's claims, $50,000 in compensatory damages, jointly and severally against NVKBB and Powell, for

4

a total of $100,000; and $75,000 in punitive damages against Powell, for a total of $150,000 in punitive damages, and a grand total of $250,000.

NVKBB and Powell filed a motion to set aside the jury's verdict, maintaining that Ellis's failure to prove any monetary or out-of-pocket damages precluded the jury's award of compensatory damages and that without proof of compensatory damages, the jury's award of punitive damages should likewise be set aside. They argued that Ellis's testimony that he filed the counterclaim against NVKBB and Powell because they first involved Ellis in a lawsuit demonstrated that Ellis's true motive for filing the lawsuit was not to seek redress for his alleged emotional injuries, but simply to address Ellis's "retribution and anger" and "retaliation." NVKBB and Powell contended that Ellis did not sufficiently testify or articulate his alleged mental anguish, but instead submitted that his purported evidence came from his counsel's imaginative argument. They added that Ellis's fear of motorcycles did not "square[] with ordinary human experience" regarding causation of "the damages he claimed he suffered."

Ellis recounted that his testimony amply described how he had been intimidated, humiliated, harassed and embarrassed by Powell's words. He reiterated that Virginia law fully supports compensatory damages for mental anguish, humiliation and embarrassment, particularly considering the specific circumstances of his claim.

Viewing the evidence in the light most favorable to Ellis, the circuit court recalled that Ellis testified about his fear, not only with respect to motorcycles, but also about how Powell's conduct affected him. Upon finding that compensatory damages recompense not only any actual loss, but also injury including insult and mental anguish, the circuit court concluded that Ellis's testimony was sufficient to support the jury's verdict. Accordingly, the circuit court entered judgment on the jury's verdict.

5

We granted NVKBB and Powell this appeal. In their first assignment of error, NVKBB and Powell assert that the circuit court erred in denying their motions to strike and to set aside the jury's verdict on the grounds that Ellis failed to prove any damages. In their second assignment of error, they contend that the circuit court erred in denying the motions to strike regarding the award for punitive damages because there was insufficient evidence to support compensatory damages.

## II. DISCUSSION

It is well-settled that "a party who comes before us with a jury verdict approved by the circuit court 'occupies the most favored position known to the law.'" *Ravenwood Towers, Inc. v. Woodyard,* 244 Va. 51, 57 (1992) (citations omitted). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Parson v. Miller*, 296 Va. 509, 523-24 (2018) (citing *Fruiterman v. Granata*, 276 Va. 629, 637 (2008) (quoting Code § 8.01-680)). Where, as here, the circuit court has "declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff."[1] *Id.* at 523-24 (citing *Bitar v. Rahman*, 272 Va. 130, 141 (2006)).

As previously noted, NVKBB and Powell conceded liability on Ellis's claim of racial harassment in violation of Code § 8.01-42.1,[2] which provides in relevant part that:

---

[1] Because the claims of Powell and NVKBB were dismissed, and the trial was solely upon the claims of Ellis for damages, he was in the posture of a "plaintiff" under these principles.

[2] Although the General Assembly amended Code § 8.01-42.1, effective July 1, 2020, the amendments do not materially affect the issues here. *See* Acts 2020, chs. 746, 1171.

6

A. An action for . . . civil damages . . . shall lie for any person who is subjected to acts of (i) intimidation or harassment or (ii) violence against his person . . . where such acts are motivated by racial, religious, or ethnic animosity.

B. Any aggrieved party who initiates and prevails in an action authorized by this section shall be entitled to damages, including punitive damages . . . .

Appellants also conceded liability on Ellis's stalking claim in violation in Code § 8.01-42.3, which provides, as relevant here, that:

A. A victim has a civil cause of action against an individual who engaged in conduct that is prohibited under § 18.2-60.3, whether or not the individual has been charged or convicted for the alleged violation, for the compensatory damages incurred by the victim as a result of that conduct . . . .  If compensatory damages are awarded, a victim may also be awarded punitive damages.

B. As used in this section:

"Compensatory damages" includes damages for all of the defendant's acts prohibited by § 18.2-60.3.

"Victim" means a person who, because of the conduct of the defendant that is prohibited under § 18.2-60.3, was placed in reasonable fear of death, criminal sexual assault, or bodily injury to himself . . . .

The acts prohibited by Code § 18.2-60.3 include engaging, on more than one occasion, in conduct "directed at another person with the intent to place, or when [the actor] knows or reasonably should know that the conduct places that person in reasonable fear of death . . . or bodily injury."  It further provides that "[i]f the person contacts . . . or attempts to contact . . . the person at whom the conduct is directed after being giving actual notice that the person does not want to be contacted . . . such actions shall be prima facie evidence" of stalking.  Code § 18.2-60.3(A).

With these appellants having conceded liability, there is no issue on appeal concerning the proof of Ellis's claims or the circuit court's application of the foregoing statutes to the evidence.  We observe, however, as did the circuit court, that the plain language of Code

7

§§ 8.01-42.1 and -42.3 expressly permits compensatory and punitive damages to be awarded to a plaintiff who prevails on such claims. Appellants also raise no issue regarding the reasonableness or the amount of damages awarded. Accordingly, our discussion is limited to the narrow issue of whether Ellis's evidence was sufficient to support the jury's award of any damages.

NVKBB and Powell argue that the evidence was insufficient because Ellis failed to identify any medical damages, out-of-pocket expenses or the specifics of any mental anguish or humiliation that would justify the award of any compensatory damages.

NVKBB and Powell cite no authority that proof of monetary damages is a predicate for compensatory damages. Instead, they contend that our reasoning in *Massie v. Firmstone*, 134 Va. 450 (1922), should apply to bind Ellis to his testimony that he filed a counterclaim against NVKBB and Powell because they involved him in a lawsuit he had nothing to do with. They assert that this testimony demonstrated that Ellis's motive for filing his claims of racial harassment and stalking was not to seek redress based on Powell's statements or because those statements caused Ellis any emotional damage, but instead was based on Ellis's quest for "retribution" and "retaliation." Therefore, under *Massie*, argue the appellants, Ellis could not "rise above" this testimony,[3] and the remainder of his testimony about emotional damages

---

[3] In *Massie*, this Court concluded that "[n]o litigant can successfully ask a court or jury to believe that he [or she] has not told the truth" and that, as a result, "[his or her] statements of fact and the necessary inferences therefrom are binding upon him [or her]." *Patterson v. Patterson*, 257 Va. 558, 563 (1999) (quoting *Massie*, 134 Va. at 462). This has succinctly been referred to as the rule that a litigant "cannot rise above his [or her] own testimony," *id.*, or the other evidence he or she has marshaled in support of a claim, *Courtney v. Commonwealth*, 281 Va. 363, 370 (2011).

should have been stricken or the circuit court should have set the jury verdict aside. We disagree.

Appellants grossly misapply *Massie*, and it simply does not apply here. Even if we assumed that NVKBB and Powell's interpretation of Ellis's testimony constitutes a reasonable inference, a litigant's motivation for filing a lawsuit is wholly unrelated to whether he has experienced any mental anguish. Similarly, *Massie* has no application and provides no support for the appellants' argument that absent any proof of monetary damages the jury's award of compensatory damages was without sufficient evidence or plainly wrong.

A review of our jurisprudence reveals that we have approved compensatory damages supported by evidence of non-pecuniary or emotional damages alone. In *Sea-Land Service, Inc. v. O'Neal,* 224 Va. 343 (1982), we upheld an award for compensatory damages based on the victim's emotional distress due to the loss of her employment caused by the employer's trickery. There, we highlighted a collection of cases involving intentional torts, such as the case at bar, in which we approved "the recovery of damages for humiliation, embarrassment, and similar harm to feelings, although unaccompanied by actual physical injury, *where a cause of action existed independently of such harm.*"[4] (Emphasis in original.) *See id*. at 354 (citing *Peshine v. Shepperson,* 58 Va. (17 Gratt.) 472, 486 (1867) (deliberate trespass); *Chesapeake & Potomac Tel. Co. v. Carless,* 127 Va. 5, 9 (1920) (wrongful suspension of telephone service); *W.T. Grant Co. v. Owens,* 149 Va. 906, 925 (1928) (false imprisonment); *James v. Powell,* 154 Va. 96, 117,

---

[4] We observe that Code § 8.01-42.1 provides for a civil action based on acts of intimidation or harassment motivated by racial, religious or ethnic animosity. Similarly, Code § 8.01-42.3 provides for a civil cause of action based on conduct that places the victim of such conduct "in reasonable fear of death . . . or bodily injury." Both statutes expressly permit compensatory and punitive damages for these claims. Neither requires proof of physical injury.

9

(1930) (libel); and *Spitzer v. Clatterbuck,* 202 Va. 1001, 1006–07 (1961) (malicious

prosecution)).

Similarly, in *Giant of Virginia., Inc. v. Pigg,* 207 Va. 679, 685 (1967), we explained that

"compensatory damages are those allowed as a recompense for loss or injury actually received

and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury

to the reputation and the like." In that case, Mrs. Pigg visited the Giant grocery store on two

separate occasions on the day in question. The second time she entered the store, she still had in

her purse the merchandise she had purchased during her first visit. As Mrs. Pigg was paying for

the additional items for which she had returned to the store, an employee saw the other items in

her purse. He confronted Mrs. Pigg and accused her of stealing. She spoke very little English

but tried to avow her innocence and explain that the receipt for the items in her purse was just

outside the store in the car with her husband and children. The employee disregarded Mrs.

Pigg's avowals and had her arrested and jailed as a petty thief. After her acquittal on the

charges, Mrs. Pigg sued Giant for malicious prosecution. A jury awarded her $5,000 in

compensatory damages and $50,000 in punitive damages. The lower court upheld the

compensatory damages but set aside the punitive damages award. On appeal, we upheld the

award of compensatory damages, and affirmed the trial court's rejection of the recovery of

punitive damages because the evidence was insufficient to prove the employee acted with actual

malice, a necessary element for award of punitive damages.[5] *See id.* at 684-66.

In addition to *Pigg*, the circuit court below relied on *Shepard v. Capitol Foundry of*

*Virginia, Inc.*, 262 Va. 715 (2001). In that case, Mrs. Shepard was killed when her vehicle and a

---

[5] Code §§ 8.01-42.1 and 42.3 expressly provide for punitive damages. Further, the appellants conceded liability, hence the issue of actual malice is not before us on appeal.

tractor-trailer owned by Capitol Foundry and driven by its employee collided. The jury awarded compensatory damages to Mrs. Shepard's husband and five adult children. Capitol Foundry moved to set aside the verdict, or in the alternative, for remittitur, arguing that the only evidence of damages was non-pecuniary and that the award was excessive. The trial court denied the motion to set aside the verdict, but, finding the evidence insufficient, granted the motion for remittitur. On appeal, we reversed the trial court's judgment, explaining that evidence of sorrow, mental anguish and solace can be sufficient to support a jury's award of compensatory damages. *Id.* at 723.

The circuit court also found the rationale in *Johnson v. Hugo's Skateway,* 974 F.2d 1408 (4th Cir. 1992), instructive. There, the Fourth Circuit upheld the trial court's denial of the defendant's motion to set aside an award of compensatory damages. As in the case at bar, the plaintiff in *Johnson* sued a roller skating rink for racial harassment pursuant to Code § 8.01-42.1. The Fourth Circuit, viewing all the evidence in the light most favorable to Johnson, and drawing all reasonable inferences in his favor, concluded the evidence was sufficient to support the jury's award of compensatory damages for racial harassment and intimidation. As relevant here, the evidence showed that Johnson was the only black patron at the skating rink on the night in question, that the owner had made derogatory comments about Johnson arriving with two white female companions, and that she had expressed her distaste for mixed-race couples. The evidence also showed that shortly after the owner made her remarks, she directed a manager to call Johnson off the skating rink and bring him to a "back room." Johnson testified that he felt threatened and intimidated by the white manager's unexplained request, in an overwhelmingly white establishment, to accompany him to a back room. Johnson refused to go to the back room, but offered to leave. However, the owner called the police, which resulted in other claims not

11

relevant here. For our purposes, it is sufficient to observe that Ellis, in the case at bar, like Johnson, submitted no evidence of monetary damages or physical injuries.

Accordingly, we find no error in the lower court's judgment and no merit in NVKBB and Powell's argument that monetary damages are a necessary predicate for an award of compensatory damages. Further, viewing the evidence in the light most favorable to Ellis, we conclude that his testimony describing how Powell's conduct made him feel intimidated, harassed, threatened, and humiliated was sufficient to support the jury's verdict and thus the circuit court's approval of the damages awards was not plainly wrong.

Because we find no error in the circuit court's judgment that the evidence, consisting solely of mental anguish, emotional distress and humiliation, was sufficient to support the jury's award of compensatory damages, and because it is well-established that compensatory damages are a predicate for an award of punitive damages, we need not address assignment of error two. *See Syed v. ZH Technologies, Inc.,* 280 Va. 58, 74-75 (2010) (holding that "an award of compensatory damages . . . is an indispensable predicate for an award of punitive damages, except in actions for libel and slander") (citations omitted).

### III. CONCLUSION

For the foregoing reasons we find no error in the circuit court's denial of appellants' motions and will affirm the circuit court's judgment entered on the jury's verdict.

*Affirmed.*