COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Retired Judge Coleman[*]
Argued by teleconference


J. DAVID PRATT
                                                    MEMORANDUM OPINION[**] BY
v.      Record No. 2394-10-4                     JUDGE ROSSIE D. ALSTON, JR.
                                                          AUGUST 21, 2012
MORGAN PATRICIA PRATT


                              UPON A REHEARING

             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                           Robert J. Smith, Judge

          Jeffrey A. Vogelman (Matthew J. Ling; Thomas, Ballenger,
          Vogelman & Turner, on brief), for appellant.

          Patrick G. Merkle (Law Offices of Patrick G. Merkle, on brief), for
          appellee.


      We issued a memorandum opinion in this case on December 20, 2011, reversing and

remanding the trial court's equitable distribution award granted in the final decree of divorce of

J. David Pratt (husband) and Morgan Patricia Pratt (wife).  Pratt v. Pratt, No. 2394-10-4, 2011

Va. App. LEXIS 410 (Va. Ct. App. Dec. 20, 2011).  In that opinion, we held that the trial court

erred in classifying the parties' residence, a 2006 Toyota, and an investment fund as marital

property and remanded for proceedings consistent with that opinion.  Id. at *20-21.

---

[*] Judge Coleman took part in the consideration of this case prior to the effective
date of his retirement as senior judge on June 30, 2012 and thereafter by designation pursuant to
Code § 17.1-400(D).

[**] Pursuant to Code § 17.1 413, this opinion is not designated for publication.

Pursuant to Rule 5A:33(b), wife requested that we reconsider our holding that the trial court erred in classifying the above-mentioned property. In response, we stayed our mandate and reheard oral arguments.[1]

Having reconsidered our earlier decision, we reaffirm our holding that the trial court erred in determining that wife's monetary and non-monetary contributions to the Springfield, Virginia residence transmuted the residence to marital property for the reasons set forth in our earlier opinion. Id. at *9-14. Additionally, we reaffirm our holding that the trial court erred in classifying the 2006 Toyota as wife's separate property because it was a gift from husband to wife. Id. at *14.

However, we vacate that portion of our earlier opinion stating that the Springfield, Virginia residence was presumptively husband's separate property in its entirety because it was purchased prior to the parties' marriage. Id. at *8-9. Instead, we now remand to the trial court for consideration of whether the Springfield, Virginia residence became part-marital property when, during the marriage, husband acquired a one-half interest in the residence from his former wife, Agatha. In addition, we vacate that portion of our earlier opinion holding that the trial court's determination that the Toyota was a gift was plainly wrong. Id. at *15-17. Instead, we hold that the trial court's finding that the Toyota was a gift was not plainly wrong; therefore, we hold that the Toyota is marital property and remand to the trial court for equitable distribution of

---

[1] However, we did not withdraw our prior opinion or order that it be vacated. "Our practice upon panel reconsideration of a memorandum opinion is to leave the original opinion in place and to address on rehearing only those aspects of the opinion that we later conclude were in error." Welch v. Commonwealth, No. 3152-03-4, 2005 Va. App. LEXIS 540, at *2 n.1 (Va. Ct. App. Oct. 18, 2005) (citing Carter v. Commonwealth, 31 Va. App. 393, 523 S.E.2d 544 (2000); Wellmore Coal Corp. v. Williamson, No. 1175-97-3, 1998 Va. App. LEXIS 10 (Va. Ct. App. Jan. 13, 1998), reinstated in part following reconsideration, Petition for Rehearing Order (May 19, 1998); Watts v. Watts, No. 2426-93-2, 1995 Va. App. LEXIS 957 (Va. Ct. App. Mar. 8, 1995) (adopting in part and vacating in part prior memorandum opinion)).

the vehicle. Finally, we vacate that portion of our earlier opinion holding that the trial court erred in classifying the Oppenheimer Value Fund as marital property, id. at *17-20, and remand for clarification and further proceedings consistent with this opinion.

BACKGROUND[2]

We adopt the Background statement from our earlier memorandum opinion in this case. Id. at *1-7. However, we note that the earlier opinion erroneously stated that Agatha's name was removed from the deed to the Springfield, Virginia residence when husband and Agatha divorced in 1996. Instead, we note that husband and Agatha held the house as tenants by the entirety during the course of their marriage. In 1996, husband and Agatha divorced. Because Agatha's name remained on the deed to the house, in 1998, after husband married wife, husband refinanced the house to repay a 1994 mortgage taken out on the home and $50,000 to Agatha's parents, who had lent Agatha and husband money for the purchase of the home in 1986. The parties agree that after this repayment, Agatha's name was removed from the deed, and the house was solely deeded in husband's name.

ANALYSIS

Standard of Review

On appeal, we view the evidence in the light most favorable to the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (citing McDavid v. McDavid, 19 Va. App. 406,

_____

[2] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

407-08, 451 S.E.2d 713, 715 (1994); <u>Srinivasan v. Srinivasan</u>, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

<u>The Springfield, Virginia Residence</u>

The trial court held that the Springfield, Virginia residence was transmuted to marital property based on wife's non-monetary, personal efforts as a homemaker and wife's monetary contributions to the mortgage. For the reasons stated in our prior opinion, we hold that the trial court erred in classifying the house as marital property on this basis.

Wife also argues that the house was actually marital or part-marital property under Code § 20-107.3(A)(2) because husband acquired full title to the house only after husband and wife married.

Wife is correct that husband acquired full title to the house in 1998, after husband and wife married. During their marriage, husband and Agatha held the house as tenants by the entirety, each owning an undivided one-half interest in the whole. <u>See</u> <u>Lightburn v. Lightburn</u>, 22 Va. App. 612, 615, 472 S.E.2d 281, 282 (1996). "Upon dissolution of a marriage, a tenancy by the entirety automatically converts into a tenancy in common." <u>Id.</u> at 615, 472 S.E.2d at 283 (citing Code § 20-111; <u>Smith v. Smith</u>, 200 Va. 77, 85, 104 S.E.2d 17, 24 (1958); <u>Gaynor v. Hird</u>, 15 Va. App. 379, 381, 424 S.E.2d 240, 241 (1992)). Therefore, upon dissolution of husband and Agatha's marriage, husband and Agatha owned the home as tenants in common.

> "A tenancy in common is where two or more persons hold lands or tenements in fee simple . . . or for term of life or years, by several titles, not by a joint title, and occupy the same lands or tenements in common; from which circumstance they are called tenants in common, and their estate a tenancy in common."

<u>Whitby v. Overton</u>, 243 Va. 20, 24, 413 S.E.2d 42, 44 (1992) (quoting 1 John T. Lomax, <u>Digest of the Laws Respecting Real Property</u> 498 (1839)). As tenants in common, husband and Agatha

- 4 -

were each entitled "'to an undivided one-half interest in the land formerly held in entirety.'" Lightburn, 22 Va. App. at 616, 472 S.E.2d at 283 (quoting Sundin v. Klein, 221 Va. 232, 241, 269 S.E.2d 787, 792 (1980)). Therefore, upon his divorce from Agatha, husband owned an undivided one-half interest in the house. Because this interest was acquired prior to husband and wife's marriage, it is separate property under Code § 20-107.3(A)(1)(i).

However, the one-half interest owned by Agatha upon husband and Agatha's divorce and obtained by husband after husband and wife's marriage is presumptively marital property. von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997) (citing Code § 20-107.3(A)(2)). As a result, husband "has the burden to produce satisfactory evidence to rebut this presumption." Stroop v. Stroop, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990) (citing Rexrode v. Rexrode, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986)).

Husband bought out Agatha's one-half interest in the house in 1998 by repaying the 1994 mortgage and $50,000 loan from her parents. Husband acquired the money to purchase Agatha's one-half interest by refinancing the house. Because husband and Agatha owned the house as tenants in common at the time of the refinancing, it is not clear what asset or assets served as collateral for the 1998 loan. The record does not reveal whether husband used separate property, such as his half-interest in the home, as collateral in the 1998 refinancing or some other asset, possibly including some marital asset. If husband used separate property as collateral for the 1998 refinancing, then the entire house would remain husband's separate property under Code § 20-107.3(A)(1)(iii), which provides that separate property includes "all property acquired during the marriage in exchange for . . . separate property." See Courembis v. Courembis, 43 Va. App. 18, 35-36, 595 S.E.2d 505, 513-14 (2004) (holding that the trial court did not err in classifying certain property as the husband's separate property when the husband used funds

from "the sale of a property, the liquidation of [another separate property], *and the refinancing of [another separate property]*" to acquire the property during the parties' marriage (emphasis added)); Gilman v. Gilman, 32 Va. App. 104, 118-19, 526 S.E.2d 763, 770 (2000) (holding that property acquired using a loan secured by stock pledges of the husband's separate stock constituted separate property under Code § 20-107.3(A)(1)). However, if husband used marital property as collateral for the 1998 refinancing, then the half-interest husband acquired from Agatha during the parties' marriage would be marital property under Code § 20-107.3(A)(2)(iii).

Because we are unable to determine from the record the exact manner by which husband acquired Agatha's half-interest in the home through the 1998 refinancing, we remand to the trial court for a determination of whether husband used separate or marital property to acquire Agatha's half-interest in the home. If husband used separate property as collateral, the entire house remains husband's separate property; however, if husband used marital property, then the house is hybrid property, with husband's original one-half interest acquired upon his divorce from Agatha remaining his separate property and the one-half interest acquired in 1998 becoming marital property.[3]

### The 2006 Toyota

The trial court found that the Toyota was wife's separate property, concluding it was a gift from husband to wife. As stated in our earlier opinion, under the plain language of Code § 20-107.3(A)(1), the trial court erred in determining that because the Toyota was a gift *from husband*, it was wife's separate property.

---

[3] Because we adopt the reasoning of our earlier opinion regarding the transmutation of the house from separate to marital property by virtue of wife's monetary and non-monetary contributions to the residence, we note that any part of the residence the trial court finds to be husband's separate property upon remand was not transmuted to marital property by wife's monetary or non-monetary contributions.

- 6 -

Instead, we hold that the Toyota is properly classified as marital property. Code § 20-107.3(A)(3)(f) provides:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

The Toyota was purchased using husband's separate property, i.e., money from his inheritance. See Code § 20-107.3(A)(1)(ii). As a result, the Toyota was originally husband's separate property. See Code § 20-107.3(A)(1)(iii). However, the Toyota was then titled jointly in the parties' names. Thus, the Toyota was transmuted to marital property unless it is retraceable by a preponderance of the evidence and was not a gift. See Code § 20-107.3(A)(3)(f).

We find that the Toyota is retraceable to husband's separate property, his inheritance. Based on this finding, we must still analyze whether the Toyota was a gift from husband to wife.

The burden was on wife to prove that the Toyota was a gift in order to prove that it is marital property under Code § 20-107.3(A)(3)(f). See Robinson v. Robinson, 46 Va. App. 652, 665, 621 S.E.2d 147, 153 (2005) (*en banc*); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). To establish the existence of a gift, the non-owning party must prove, by clear and convincing evidence "'(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Prizzia v. Prizzia, 58 Va. App. 137, 163, 707 S.E.2d 461, 473-74 (2011) (quoting Robinson, 46 Va. App. at 665, 621 S.E.2d at 154) (internal quotation marks omitted). The question of whether a spouse intends to make a gift to another spouse is "one of fact to be determined by the trial court." Patterson v. Patterson, 257 Va. 558, 564, 515 S.E.2d 113, 116 (1999). The trial court's determination will not be disturbed

on appeal unless "plainly wrong or without evidence to support it." Prizzia, 58 Va. App. at 164, 707 S.E.2d at 474; see also Code § 8.01-680.

In this case, the trial court's determination that the Toyota was a gift was not plainly wrong or without adequate evidence to support it. Wife test drove and chose the Toyota. In addition, wife testified that she typically drove the Toyota and husband asked to "borrow" the car when he wished to drive it. When asked whether husband had given her anything in writing to confirm the gift of the Toyota, wife responded, "I took his word," implying that husband told her the Toyota was a gift. This evidence supported the trial court's determination that the Toyota was a gift, and the trial court's finding in this regard was not plainly wrong.

As a result, we hold that the Toyota was marital property under Code § 20-107.3(A)(3)(f). We remand to the trial court on this issue for equitable distribution of the Toyota.

The Oppenheimer Value Fund

Wife argues upon rehearing that there was no testimony at trial regarding the Oppenheimer Value Fund. Replacement Pet. for Reh'g at 6. We note that the following exchange between wife's counsel and husband regarding the Oppenheimer Value Fund occurred during cross-examination at trial:

> [Wife's counsel:]  Now does the policy – there's the account which I've been referring to as the Oppenheimer Fund but I don't see it here, that's - is that the public fiduciary trust or is that something different?
>
> [Husband:]  No, it's this.
>
> [Wife's counsel:]  Now one of these was an account that you actively contributed to and took money out during the marriage, correct?
>
> [Husband:]  No, sir.  I think I had a savings account.

- 8 -

[Wife's counsel:] All right, I have been provided by your Counsel four accounts that I need to ask you about. One is taken care of and that's this SunAmerica annuity. It's your testimony that you never touched that during your marriage?

[Husband:] Correct.

[Wife's counsel:] Then you have this Oppenheimer Fund which is about a $10,000 balance and I wonder if that doesn't correspond to the Putnam Investments which is not listed separately on the personal property list provided by your Counsel.

[Husband:] The Putnam Investment is one account and the Oppenheimer is another.

[Wife's counsel:] Do you have a statement from Oppenheimer?

[Husband:] I thought I did but I don't have it here.

This exchange represents the entirety of the testimony regarding the Oppenheimer Value Fund at trial. An investment statement from the account was also introduced into evidence at trial. The trial court found that the Oppenheimer Value Fund was "purchased prior to the marriage," and "jointly titled." The trial court then held that the fund was marital property, with no explanation for its holding. Because of the limited facts regarding the Oppenheimer Value Fund found in the record, we are unable to determine if the trial court erred in classifying the fund as marital property. As a result, we remand to the trial court for a clarification of its holding regarding the Oppenheimer Value Fund. See Shiembob v. Shiembob, 55 Va. App. 234, 240-41, 685 S.E.2d 192, 196 (2009) (remanding to the trial court for clarification of its classification of property).

### Attorneys' Fees

Husband has requested appellate attorneys' fees upon rehearing. Because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d

426, 438 (2004), we deny husband's request for an award of attorneys' fees and costs incurred on appeal, see O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

CONCLUSION

Thus, in sum, we (1) reaffirm our holding that the trial court erred in classifying the Springfield, Virginia residence as marital property based on wife's monetary and non-monetary contributions to the home but remand for consideration of whether husband's acquisition of one-half interest in the home from Agatha in 1998 created a one-half marital property interest in the home and for reconsideration of the total equitable distribution scheme, if the trial court determines, in its discretion, that such reconsideration is warranted; (2) hold that the trial court erred in classifying the 2006 Toyota as wife's separate property rather than marital property; and (3) remand to the trial court for a clarification of its classification of the Oppenheimer Value Fund as marital property. As a result, we remand for proceedings consistent with this opinion.

Reversed and remanded.

# VIRGINIA:

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **13th**  *day of*  **March, 2012**.

J. David Pratt,                                                                                            Appellant,

 against          Record No. 2394-10-4
                  Circuit Court No. CL09-11281

Morgan Patricia Pratt,                                                                                 Appellee.

Upon a Petition for Rehearing

Before Judges Petty, Alston and Senior Judge Coleman

On January 3, 2012 came appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on December 20, 2011, and grant a rehearing thereof.  On February 21, 2012 appellee filed an amended petition for rehearing at the direction of the Court.

On consideration whereof, the petition for rehearing is granted, the mandate entered herein on December 20, 2011 is stayed pending the decision of the Court, and the appeal is reinstated on the docket of this Court.

Pursuant to Rule 5A:35(a), the respondent may file an answering brief within 21 days of the date of entry of this order.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

                              *original order signed by a deputy clerk of the*
                    By:   *Court of Appeals of Virginia at the direction*
                              *of the Court*

                              Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


J. DAVID PRATT

v.        Record No. 2394-10-4

MORGAN PATRICIA PRATT

MEMORANDUM OPINION* BY
JUDGE ROSSIE D. ALSTON, JR.
DECEMBER 20, 2011


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Jeffrey A. Vogelman (Matthew J. Ling; Thomas, Ballenger,
Vogelman & Turner, on brief), for appellant.

(Patrick G. Merkle; Law Offices of Patrick G. Merkle, on brief),
for appellee.


J. David Pratt (husband) appeals from the trial court's equitable distribution award,

granted in a final decree of divorce. On appeal, husband alleges that the trial court erred in

classifying the Springfield, Virginia residence, a 2006 Toyota, and the Oppenheimer Value Fund

as marital property. For the reasons that follow, we reverse the decision of the trial court and

remand for additional proceedings consistent with this opinion.

BACKGROUND[1]

Husband and Morgan Patricia Pratt (wife) were married in December 1996. During the

parties' marriage, husband worked as an ordained minister until he retired in 2000, at which

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

point he continued to work as a handyman and wedding officiant. Wife was also employed until she retired in 2001, then becoming a homemaker. Wife left the marital residence in June 2006, and husband filed a complaint for divorce in August 2009. Wife filed a counter-claim for divorce shortly thereafter. A bench trial was held on August 16, 2010. At the conclusion of the trial, the trial court entered a final decree of divorce and entered an equitable distribution award for the property at issue in the instant appeal.

<u>The Springfield, Virginia Residence</u>

Prior to the parties' marriage, in 1986, husband and his previous wife Agatha bought a house located in Springfield, Virginia, for $165,182.66. Husband took out a mortgage on the house in 1994.

When husband and Agatha divorced in 1996, Agatha's name was removed from the title of the house, leaving the house titled solely in husband's name. In 1998, after husband married wife, husband refinanced the house to repay the 1994 mortgage and $50,000 owed to Agatha's parents, who had loaned husband and Agatha money to purchase the house. In 2003, husband again refinanced the house, taking out a note for approximately $165,000. In 2004, husband refinanced the residence for a third time, with a $191,000 interest-only note. From 1998 to the date of trial, husband remained solely obligated on the notes taken out on the house, and the house remained solely titled in husband's name. At the time of trial, the 2004 mortgage remained on the house. Bank statements from an account at the Eastern Ohio United Methodist Conference Credit Union (the Eastern Ohio account) show that mortgage payments on the residence were made from this account.[2]

---

[2] For most of the parties' marriage, the Eastern Ohio account was in husband's name only. In 2006, husband added wife's name to the Eastern Ohio account. Wife's name was later removed from the account in 2009, after wife removed $12,000 from the account shortly before leaving the marital home.

In 2009, the Fairfax County Department of Tax Administration assessed the value of the house at $431,560. In 2010, the Fairfax County Department of Tax Administration assessed the value of the house at $407,170.

At trial, wife testified that she was a homemaker and performed many of the household chores and errands, such as picking up dry-cleaning, washing, shopping, cleaning the house, doing the laundry, cooking, and gardening. According to wife, she decorated and furnished the house, including purchasing fabric and making drapes for the master bedroom. Wife also claimed that she paid to have the master bedroom repainted and the ceiling altered. Wife also testified that during the marriage, she and husband undertook several home improvement projects such as painting, removing wallpaper, and putting up drywall. According to wife, she and husband used "household money" to purchase various appliances for the house, and wife used her salary for household expenses. Wife also testified that she had written checks to husband totaling $10,000 for household and other expenses in 2000 and 2001. Wife testified that husband deposited his earnings from his handyman work and wedding officiating into the Eastern Ohio account, from which he paid the mortgage.

Husband testified at trial that wife did not contribute money for the mortgage payments on the house. Husband testified that wife began renovations on the house that were never completed and that any "things that were done on the house" were paid from his salary and pension. According to husband, the value of the house declined in the mid-1990s.

The trial court concluded that the house was marital property and ordered husband to pay wife $108,805, representing 50% of the equity in the property. In explaining its decision that the residence was marital property, the trial court stated that wife "did contribute to the house . . . in her capacity as a homemaker and she took over the house. It was an empty box. She took it over, furnished it, and made it into a home." The trial court also stated that "the reason [it] found

- 3 -

the home to be marital property is that [wife] testified that she would write checks from her account and give [them] to [husband]. And I think a fair inference of that evidence is that some of that money went into paying the mortgage."

### The 2006 Toyota

In 2005, husband received an inheritance of $70,525.59. Husband deposited the inheritance into the Eastern Ohio account, which, at the time of deposit, was solely in husband's name. Husband used approximately $16,000 of the inheritance money to purchase a 2006 Toyota Matrix, which was jointly titled in husband's and wife's names. At trial, the parties stipulated that the car's value was $10,000.

Wife testified that she test drove and chose the Toyota prior to its purchase. According to wife, she typically drove the Toyota, and when husband wanted to drive it he would ask her if he could borrow it. Husband testified that he purchased the Toyota using the money from his inheritance.

The trial court found that the Toyota was wife's separate property, concluding that it was a gift from husband to wife.

### The Oppenheimer Value Fund

An account statement introduced at trial showed that the value of the Oppenheimer Value Fund was $9,962.29 and was registered in both parties' names as of June 30, 2010. Husband testified at trial that the Oppenheimer Value Fund was separate from other investment funds he owned. Husband also testified that he did not contribute to or remove money from the Oppenheimer Value Fund during the course of the parties' marriage. There was no other testimony or evidence regarding the Oppenheimer Value Fund introduced at trial.

The trial court found that the Oppenheimer Value Fund was purchased prior to the parties' marriage, was jointly titled in the parties' names, and was marital property. The trial

court valued the Oppenheimer Value Fund at $9,962 and ordered that it be divided equally between the parties.

## ANALYSIS

### Standard of Review

On appeal, we view the evidence in the light most favorable to the party prevailing below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "Because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005) (citing McDavid v. McDavid, 19 Va. App. 406, 407-08, 451 S.E.2d 713, 715 (1994); Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990)).

### The Springfield, Virginia Residence

The trial court held that the Springfield, Virginia residence was marital property based on wife's non-monetary, personal efforts as a homemaker and wife's monetary contributions to the mortgage.

We note at the outset that the trial court implicitly began with the presumption that the residence was husband's separate property before considering whether the house was transmuted to marital or hybrid property. See Duva v. Duva, 55 Va. App. 286, 297, 685 S.E.2d 842, 848 (2009) (stating that this Court "begin[s] with the premise that . . . 'property acquired before marriage is presumed to be separate'" (quoting Robinson v. Robinson, 46 Va. App. 652, 662, 621 S.E.2d 147, 152 (2005) (*en banc*))). The trial court found that the house was purchased in July 1986, before the parties' marriage, and titled in husband's name. Code § 20-107.3(A)(1) states that separate property includes "all property, real and personal, acquired by either party before the marriage."

We reject wife's argument on appeal that the house was not husband's separate property because he did not acquire full legal title from Agatha until after his marriage to wife. This Court has previously rejected the argument that, for the purposes of determining whether property is marital or separate, property is acquired through a "process" rather than on a date certain, when title is taken. Duva, 55 Va. App. at 299, 685 S.E.2d at 849 (citing Wagner v. Wagner, 4 Va. App. 397, 358 S.E.2d 407 (1987), superseded in part by Code § 20-107.3(A)).[3] Here, husband acquired the residence in 1986, before the parties' marriage. Under Code § 20-107.3(A)(1), the house is presumptively husband's separate property.

Although the house was husband's separate property at the beginning of the parties' marriage, "depending on how property is utilized during the marriage, property that was at one time 'separate' can be converted into either 'marital' property or 'part marital property and part separate property' for the purposes of equitable distribution." von Raab v. von Raab, 26 Va. App. 239, 246, 494 S.E.2d 156, 159 (1997) (citing McDavid, 19 Va. App. at 410-11, 451 S.E.2d at 716). More specifically, the increase in value of separate property may be classified as marital property or part marital property if "marital property or the personal efforts of either party have contributed to such increases," provided that any personal efforts are "significant and result in substantial appreciation of the separate property." Code § 20-107.3(A)(1), (A)(3)(a). The marital or part-marital property interest in these instances is limited to those increases that a party can show resulted from the contribution of marital property or personal efforts. Id.

The trial court concluded that wife's personal efforts as a homemaker had transmuted the house from separate to marital property. Once husband demonstrated that the house was initially

---

[3] Wagner was decided prior to the 1990 amendment to Code § 20-107.3(A). However, because the concept of hybrid property is not material to initial classification, the 1990 amendment to the statute has no effect on the holding of Wagner as it applies to the acquisition issue discussed herein.

his separate property, wife bore the burden to demonstrate: "(1) that she contributed '. . . personal effort' to the [property], and (2) that, as a proximate result of her contributions, 'the separate property increased in value.'" Robinson, 46 Va. App. at 668, 621 S.E.2d at 155 (quoting Code § 20-107.3(A)(3)). To satisfy the first requirement, wife must show that her personal efforts were "significant," Code § 20-107.3(A)(1), (A)(3)(a), *amounting to "more than customary care, maintenance, and upkeep."* Martin v. Martin, 27 Va. App. 745, 757, 501 S.E.2d 450, 456 (1998) (*en banc*) (emphasis added).

In the instant case, wife's personal efforts amounted to no more than customary care, maintenance, and upkeep of the house. Wife testified that she performed household chores and errands, gardened, decorated and furnished the house, and undertook home improvement projects such as painting and installing drywall and appliances. Similar to the wife in Martin, who had "personally painted, wallpapered, and carpeted parts of the house," these activities do not as a matter of this Court's settled law prove a significant personal effort. Id. Moreover, wife offered no evidence that her personal efforts, or any marital property contributed to household maintenance or renovations, caused an increase in the value of the residence. As a result, we hold that the trial court erred in determining that wife's personal efforts transmuted the house from separate to marital property because there is no evidence that wife contributed legally significant personal efforts that substantially increased the value of the residence.

In making its determination, the trial court also relied upon wife's monetary contributions to the mortgage payment on the house in concluding that the house was marital property. However,

> "When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the

> evidence and was not a gift, such contributed property shall retain its original classification."

Moran v. Moran, 29 Va. App. 408, 413, 512 S.E.2d 834, 836 (1999) (quoting Code § 20-107.3(A)(3)(d)). Thus, when marital property is contributed to enhance or maintain separate property, the *marital property* contribution is transmuted to *separate property*, unless the marital property is retraceable and was not a gift.

Here, the trial court found, as a matter of fact, that the parties used marital property to pay the mortgage on the residence. This determination was not plainly wrong or without evidence to support it. Wife testified that she had written checks to husband totaling $10,000 for household and other expenses in 2000 and 2001 and that husband deposited earnings from his work as a handyman and wedding officiant into the Eastern Ohio account. Because this money was earned during the parties' marriage, it is marital property. Code § 20-107.3(A)(2)(iii). Bank statements from the Eastern Ohio account show that the mortgage was paid from this account. Therefore, the evidence supported the trial court's finding that marital property was used to pay the mortgage on the residence.

However, the trial court erred in concluding that, because *some* marital property was used to pay the mortgage on the residence, the residence was transmuted into marital property *in its entirety*. In this regard, similar to the trial court error in Duva, "the trial court did not consider marital funds losing [their] classification as marital property when commingled with the receiving property. It did not consider whether wife traced the marital funds. Thus, the trial court applied the incorrect standard in determining whether the property is separate, marital, or hybrid." Duva, 55 Va. App. at 294-95, 685 S.E.2d at 846-47 (footnote omitted). We hold that the trial court's classification of the residence as entirely marital and its failure to scrutinize the tracing of marital funds used to pay the mortgage was in error. Thus, we remand to the trial court for a determination of what property, if any, used to pay the mortgage can be retraced to

- 8 -

marital property and thus retains its classification as marital property, based on the evidence in the record.

The 2006 Toyota

The trial court found that the Toyota was wife's separate property, concluding it was a gift from husband to wife.

Code § 20-107.3(A)(1) defines separate property, in pertinent part, as "all property acquired during the marriage by bequest, devise, descent, survivorship or gift *from a source other than the other party*." (Emphasis added). Thus, under the plain language of Code § 20-107.3(A)(1), the trial court erred in determining that because the Toyota was a gift *from husband*, it was wife's separate property.

Moreover, we hold that the Toyota is properly classified as husband's separate property. Code § 20-107.3(A)(3)(f) provides:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent that the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

The Toyota was purchased using husband's separate property, i.e., money from his inheritance. See Code § 20-107.3(A)(1)(ii). As a result, the Toyota was originally husband's separate property. See Code § 20-107.3(A)(1)(iii). However, the Toyota was then titled jointly in the parties' names. Thus, the Toyota was transmuted to marital property unless it is retraceable by a preponderance of the evidence and was not a gift. See Code § 20-107.3(A)(3)(f).

We find that the Toyota is retraceable to husband's separate property, his inheritance. Based on this finding, we must still analyze whether the Toyota was a gift from husband to wife.

Thusly, if a party successfully retraces assets obtained during the marriage to his separate property, the burden is on the opposing party to prove that those assets were a gift in order to

- 9 -

prove that the property is marital under Code § 20-107.3(A)(3)(f). Robinson, 46 Va. App. at 665, 621 S.E.2d at 153; Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996). To establish the existence of a gift, the non-owning party must prove, by clear and convincing evidence "'(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee.'" Prizzia v. Prizzia, 58 Va. App. 137, 163, 707 S.E.2d 461, 473-74 (2011) (quoting Robinson, 46 Va. App. at 665, 621 S.E.2d at 154) (internal quotation marks omitted). The question of whether a spouse intends to make a gift to another spouse is "one of fact to be determined by the trial court." Patterson v. Patterson, 257 Va. 558, 564, 515 S.E.2d 113, 116 (1999). The trial court's determination will not be disturbed on appeal unless "plainly wrong or without adequate evidence to support it." Id. at 564, 515 S.E.2d at 117 (citing Code § 8.01-680).

In this case, wife failed to prove, by clear and convincing evidence, husband's intent to give her the Toyota as a gift. Although the Toyota was jointly titled in the parties' names, no presumption of a gift arises simply from a party's decision to jointly title separate property. Robinson, 46 Va. App. at 665, 621 S.E.2d at 153-54 (citing Code § 20-107.3(A)(3)(g); Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003); Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997); Lightburn v. Lightburn, 22 Va. App. 612, 616-17, 472 S.E.2d 281, 283 (1996)). Moreover, even though wife typically drove the Toyota and husband asked to "borrow" the car when he wished to drive it, that does not prove by clear and convincing evidence that husband intended the Toyota to be a gift to wife. We find that this evidence could do nothing more than suggest that husband intended merely to provide wife with the *use* of a car. Thus, the trial court's determination that the Toyota was a gift was plainly wrong.

Because the Toyota is retraceable to husband's separate property and was not a gift, we hold that it retains its original classification as husband's separate property under Code

§ 20-107.3(A)(3)(f). As a result, the trial court erred in determining that the Toyota was wife's separate property.

### The Oppenheimer Value Fund

The trial court found that the Oppenheimer Value Fund was marital property and ordered that it be divided equally between the parties. Because we find that the value of the Oppenheimer Value Fund can be retraced to husband's separate property and there is no evidence to support either a finding that the fund was a gift from husband to wife, or that there were any contributions to or removal of money from the Oppenheimer Value Fund during the course of the parties' marriage, we hold that the fund is husband's separate property. Thus, the trial court erred in finding that it is marital property.

As stated above, Code § 20-107.3(A)(3)(f) provides that separate property retitled in the joint names of the parties is transmuted to marital property unless the property is "retraceable by a preponderance of the evidence and was not a gift." Here, the Oppenheimer Value Fund was jointly titled in the parties' names. However, the fund is clearly retraceable to husband's separate property and was not a gift.

"[T]he party claiming a separate interest in transmuted property bears the burden of proving retraceability. If the party claiming the separate interest in transmuted property proves retraceability, the burden shifts to the other party to prove that the transmutation of the separate property resulted from a 'gift.'" von Raab, 26 Va. App. at 248, 494 S.E.2d at 160 (citation omitted).

> The goal of the tracing process is to link a transmuted asset to its primary source, which is either separate property or marital property. See Brett R. Turner, Equitable Distribution of Property § 5.23 (2d ed. 1994). Whether a transmuted asset can be traced back to a separate property interest is determined by the circumstances of each case, including the value and identity of the separate interest at the time of transmutation.

Id. At trial, husband testified that he had not contributed to, nor removed money from, the Oppenheimer Value Fund during the parties' marriage. Thus, husband must have established the Oppenheimer Value Fund before the parties' marriage. Code § 20-107.3(A)(1) defines separate property, in pertinent part, as "all property, real and personal, acquired by either party before the marriage." See also Rahbaran v. Rahbaran, 26 Va. App. 195, 209, 494 S.E.2d 135, 142 (1997) ("We are guided by the basic principle that . . . 'property acquired before marriage is presumed to be separate.'" (quoting Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993))). Because the evidence shows that husband established the Oppenheimer Value Fund before marriage, with property that was therefore his separate property, we find that the Oppenheimer Value Fund is retraceable to husband's separate property.

Furthermore, we find that wife failed to satisfy her burden to prove that the Oppenheimer Value Fund was a gift. Although the Oppenheimer Value Fund was jointly registered in the parties' names, as noted above, no presumption of a gift arises from a party's decision to jointly title separate property. Robinson, 46 Va. App. at 665, 621 S.E.2d at 153-54 (citing Code § 20-107.3(A)(3)(g); Utsch, 266 Va. at 128, 581 S.E.2d at 508; Rowe, 24 Va. App. at 137, 480 S.E.2d at 766; Lightburn, 22 Va. App. at 616-17, 472 S.E.2d at 283). There was no other evidence regarding any donative intent on husband's part. Therefore, we find that, as a matter of law, the Oppenheimer Value Fund was not a gift from husband to wife. Consequently, under Code § 20-107.3(A)(3)(f), the Oppenheimer Value Fund is husband's separate property, and the trial court erred in classifying it as marital property.

### Attorneys' Fees

Both parties have requested appellate attorneys' fees. Because this litigation "addressed appropriate and substantial issues," and "neither party generated unnecessary delay or expense in pursuit of its interests," Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438

(2004), we deny both parties' requests for an award of attorneys' fees and costs incurred on appeal, see O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

## CONCLUSION

For these reasons, we find that the trial court erred in classifying the Springfield, Virginia residence, 2006 Toyota, and Oppenheimer Value Fund as marital property and remand for proceedings consistent with this opinion.

Reversed and remanded.